James S. SINEX, Plaintiff,

v.

Andrew K. WALLIS and Norgas Sales and Service, Inc., Defendants and Third–Party Plaintiffs,

v.

W.S.P. COMBS, JR., AGENCY, Ellen Combs Davis, Aetna Life & Casualty Company, Utica Mutual Insurance Company, Third–Party Defendants.

Superior Court of Delaware, New Castle County.

Submitted: March 10, 1987.
Decided: Aug. 1, 1988.

---

Wayne N. Elliott, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiff.

Victor F. Battaglia, and Wayne A. Marvel, of Biggs & Battaglia, Wilmington, for third-party defendant Aetna Life & Cas.

Thomas J. Roman, of Kimmel, Spiller & Weiss, P.A., Wilmington, for defendants Andrew K. Wallis and Norgas Sales & Service, Inc.

James F. Kipp, of Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, for third-party defendants W.S.P. Combs, Jr., Agency, Ellen Combs Davis, and Utica Mut. Ins. Co.

GEBELEIN, Judge.

This is an action pursuant to an alleged subrogation of rights from the plaintiff, James S. Sinex, to Nationwide Insurance Company (hereinafter, "Nationwide"). The rights which are the subject of the alleged subrogation arose out of a motor vehicle collision between the plaintiff and defendant, Andrew K. Wallis (hereinafter, "Wallis"), an employee of defendant Norgas Sales & Service, Inc. (hereinafter, "Norgas"). The purported subrogee, Nationwide, is seeking to enforce those rights against the defendants and several third-party defendants. The third-party defendants are the defendants' motor vehicle carrier, Aetna Life and Casualty Company (hereinafter, "Aetna"); Aetna's agent, W.S.P. Combs, Jr. Insurance Agency (hereinafter, "W.S.P. Combs"); the W.S.P. Combs' agent, Ellen Combs Davis; and W.S.P. Combs' errors and omissions carrier, Utica Mutual Insurance Company. The defendants and third-party defendants have moved for summary judgment.

On or about July 1, 1981, the plaintiff and defendant Wallis were involved in a motor vehicle collision on County Route 456 near the intersection of Route 456 and Route 896 in Townsend, Delaware. Wallis was employed by defendant Norgas and was at the time of the collision acting within the scope of that employment. On September 22, 1982, the plaintiff filed the present action against Wallis and Norgas.

In their answer, Wallis and Norgas asserted third-party claims against their insurance carrier, Aetna, and the other third-party defendants. In response, Aetna filed a motion for summary judgment against Wallis and Norgas, claiming that because Norgas had been late on certain premium payments on its policy with Aetna, Aetna could not be held liable under the policy. Concerned that Aetna would not cover his damages, the plaintiff filed suits against his insurance carrier, Nationwide, in this Court and in the Court of Common Pleas to enforce an uninsured motorist clause in his policy with Nationwide. C.A. No. 83C–SE–47; C.A. No. 183–06–83. An uninsured motorist clause obligates an insurer to make payment to an insured who is involved in a collision with a motorist who has no insurance or who has insurance in an amount less than that required by the financial responsibility law. *See* 18 *Del.C.* § 3902(a)(4).

In October 1984, this Court denied Aetna's motion for reargument of its motion for summary judgment against the defen-

dants, holding that Aetna was bound by its policy with Norgas and Wallis. *Aetna Life & Casualty Co. v. Norgas*, Del.Super., C.A. No. 82C–SE–71, Poppiti, Judge (October 31, 1984). Nonetheless, on November 30, 1984, plaintiff and Nationwide reached a settlement in the amount of $90,000. Under the settlement agreement, the plaintiff assigned all of his claims against the defendants and third-party defendants to Nationwide. Nationwide, as an alleged subrogee, is now attempting to enforce those claims.

Subrogation is "the lawful substitution of a third party in place of a party having a claim against another party". *Black's Law Dictionary* 1279 (Special Deluxe 5th Ed. 1979). It is a substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to a debt or claim, and its rights or remedies. *Id.* Insurance companies generally have the right to assert the claims of a party whom they compensate against any party whom the compensated party could have sued. *Id.*

■ While subrogation is not dependent on legal assignment or upon contract agreement among the affected parties, the person who pays the debt must not be a mere volunteer, "for the payment must have been made under compulsion, or for the protection of some interest of the person making it in discharge of an existing liability which must be fully satisfied." 16 *Couch on Insurance Law* 2d §§ 61.55–61.59 (1983). While the insurer is not entitled to subrogation when it issues an unrequired payment (and therefore assumes the status of a volunteer), any doubt as to the applicability of the principal is construed in favor of the insurer and the non-existence of a volunteer status. *Couch, supra* § 61.57. *See also*, 16 *Couch on Insurance* 2d, § 61:57 ("voluntary" status of payment may be determined by jury); *Western Natural Gas Co. v. Cities Service Gas Co.*, Del.Supr., 201 A.2d 164 (1964), U.S. cert. den., 379 U.S. 905, 85 S.Ct. 189, 13 L.Ed.2d 177 (1966) (question of duress or voluntariness basically is one of fact); *Baio v. Commercial Union Ins. Co.*, Del.Supr., 410 A.2d 502, 506 (1979) (objective of subrogation is to reimburse person who met obligation of another or who paid money or compensation owed by another; subrogation is an equitable remedy, and one who seeks it must, in turn, do equity.)

## I.

■ In the present controversy, the defendants and third-party defendants claim that Nationwide's $90,000 payment to the plaintiff in satisfaction of the defendants' and third-party defendants' obligations to the plaintiff lacked the element of compulsion necessary to effect a subrogation of the plaintiff's rights to Nationwide. Specifically, they argue that the uninsured motorist clause in the plaintiff's policy with Nationwide cannot serve as a basis for Nationwide's obligation to make the payment, because this Court's decision of October 31, 1984 precluded the occurrence of the condition (the defendants' lack of coverage) that would make Nationwide's duty of performance under the clause absolute.

The defendants misconstrue the legal import of that decision. The October 1984 decision merely held that the insurance policy between Norgas and Aetna remained valid, despite Norgas' late payment on a premium. There remained a minimal possibility that Aetna would breach its policy with Norgas or a much more substantial chance that it would stubbornly delay its performance under the policy, or seek review of that decision. Thus, the condition to Nationwide's performance under the uninsured motorist clause in its policy with the plaintiff was still capable of occurring. *See, e.g., Gov't Employees Ins. Co. v. Taylor*, 270 Md. 11, 310 A.2d 49 (1973) (one is not a volunteer or officious intermeddler when he advances money to protect an interest of his own.) It was not until August of 1985 that Aetna filed its complaint in interpleader, recognizing that plaintiff was entitled to the interpleaded funds in the event a judgment was rendered in his favor.

The fact that the condition was still *capable* of occurring does not, of course, end the analysis. It is arguable that Nation-

wide should have waited until an actual breach by Aetna, or a reversal of the pertinent decision, before making the $90,000 payment to the plaintiff.

Eighteen *Del.C.* § 3902(a)(4) (formerly § 3902(d)) provides as follows:

> In the event of payment to any person under *uninsured vehicle coverage* and, subject to the terms of such coverage, to the extent of such payment, the *insurer shall be entitled to the proceeds of any settlement recovery from any person legally responsible for the bodily injury or property damage as to which such payment was made and to the amount recoverable from the assets of the insolvent insurer of the other vehicle;* provided, that this amount of subrogation is limited to the amount of coverage required by the financial responsibility law. (emphasis added.)

An uninsured vehicle is defined as one for which the insuring company denies coverage. This definition was adopted shortly after the accident in question, but before decision on the motion for summary judgment, and before Nationwide's settlement. In any event, it is worthy of consideration when viewing the propriety or voluntariness of Nationwide's actions. *See generally, Brown v. Comegys,* Del.Super., 500 A.2d 611 (1985) (insurer was not entitled to have uninsured liability reduced by amount of recovery from covered joint tortfeasor or to have litigation stayed until recovery from joint tortfeasor had been established, where statute contemplated insurer was subrogated to proceeds of settlement with person legally responsible for payment. Plaintiff was entitled to uninsured motorist coverage for unknown truck driver tortfeasor). Another question arises as to whether Nationwide knew, or should have known, about the result of the summary judgment suit, and settled with plaintiffs in error.

■ On a motion for summary judgment, this Court's only function with respect to jury questions is to determine whether reasonable minds might differ over the resolution of certain questions. *See,* e.g., Super.Ct.Civ.R. 56. In light of the foregoing, it is this Court's opinion that a reasonable jury could find that Nationwide's $90,000 payment was founded upon an obligation under the uninsured motorist clause contained in its policy with the plaintiff and that Nationwide therefore acquired subrogation rights against the defendants and third-party defendants.

## II.

The defendants and third-party defendants next argue that if Nationwide does indeed have subrogation rights, those rights are limited by statute. Eighteen *Del.C.* § 3902(a)(4) states:

> In the event of *payment to any person under uninsured vehicle coverage* and, subject to the terms of such coverage, to the extent of such payment, the *insurer shall be entitled to the proceeds of any settlement* recovery *from any person legally responsible* for the bodily injury or property damage as to which such payment was made and to amount recoverable from the assets of the insolvent insurer of the other vehicle; *provided, that this right of subrogation is limited to the amount of coverage required by the financial responsibility law.* [Emphasis added.][1]

The Delaware Supreme Court recently had an opportunity to construe § 3902(a)(4) in *Home Insurance Company v. Maldonado,* Del.Supr., 515 A.2d 690 (1986). In *Maldonado,* the plaintiffs received a settlement payment from the tortfeasor, Maldonado, that was less than the plaintiffs' liability coverage. Plaintiffs thereafter sued their insurance carrier, Home Insurance Company, to recover benefits under an underinsured motorist endorsement. Home Insurance Company in its own name then filed a third-party claim for subrogation against the tortfeasor. Eventually, Home Insurance Company made a payment to the plaintiffs under the underinsurance endorsement and the action became solely

---

1. The financial responsibility law, 21 *Del.C.* § 2902, sets forth minimum liability policy lim-   its for motor vehicle insurance.

one for subrogation by Home Insurance Company against Maldonado. In *Maldonado,* the Delaware Supreme Court held that because Maldonado carried liability insurance in compliance with the Financial Responsibility Laws, 18 *Del.C.* § 3902(a)(4) insulated him from any further liability. *Maldonado,* 515 A.2d at 696–697.

The defendants and third-party defendants in the present case contend that the above-mentioned holding stands for the proposition that § 3902(a)(4) gives the tortfeasor a shield that he can raise in any subrogation action. However, the Supreme Court's language in *Maldonado* indicates no intent to accord the tortfeasor such protection.

Eighteen *Del.C.* § 3902(a)(4) consists of two parts. The first part of § 3902(a)(4), as noted above, states as follows:

> In the event of payment to any person under uninsured vehicle coverage and, subject to the terms of such coverage, to the extent of such payment, the insurer shall be entitled to the *proceeds* of any settlement recovery from any person legally responsible for the bodily injury or property damage as to which such payment was made and to amount recoverable from the assets of the insolvent insurer of the other vehicle. [Emphasis added.]

The second part of § 3902(a)(4), as noted above, states as follows:

> ... provided that this right of subrogation is limited to the amount of coverage required by the financial responsibility law.

*Black's Law Dictionary* defines "proceeds" as "that which results, proceeds, or accrues from some possession or transaction." *Black's Law Dictionary* 1084 (5th Ed.1979). The first part of 18 *Del.C.* § 3902(a)(4), therefore, grants to an insurance carrier who has made a payment under an uninsured motorist clause that which *results from a settlement recovery* from any person legally responsible for the bodily injury or property damage as to which the insurance carrier has made a payment. The first part of section 3902(a)(4) does not expressly create any rights directly against the person legally

responsible for the bodily injury or property damage for which the insurance carrier has made a payment.

The effect of the first part of § 3902(a)(4) is to statutorily mandate that a plaintiff who receives a settlement recovery hold that settlement recovery in trust for his insurance carrier, if his carrier previously made a payment to him under an uninsured motorist clause. In fact, the language of the first part of § 3902(a)(4) virtually is identical to, and apparently was derived from, boiler-plate language used for many years in insurance endorsements establishing a "Trust Agreement" between the insurance carrier and the insured. *See,* e.g., *Raitt v. National Grange Mutual Insurance Company,* 111 N.H. 397, 285 A.2d 799 (1971); and *see, generally,* Widiss, *A Guide to Uninsured Motorist Coverage,* 162–167 (1969). Under the "Trust Agreement", the insurance carrier was entitled to whatever amounts the insured received from the "party legally responsible" up to the amount of the payment by the insurance carrier.

It has been held that the right which the Trust Agreement grants the insurance carrier is a right of subrogation. *Remsen v. Midway Liquors, Inc.,* 30 Ill.App.2d 132, 174 N.E.2d 7, 13 (1961). The first part of 18 *Del.C.* § 3902(a)(4), therefore, likewise creates a right of subrogation in an insurance carrier who has made payment to an insured under an uninsured motorist clause.

The right of subrogation which the first part of 18 *Del.C.* § 3902(a)(4) creates in the subrogee-insurer actually vests the subrogee-insurer with two distinct rights. First, the first part of § 3902(a)(4) expressly vests the subrogee-insurer, to the extent of his payment to the insured, with a legal right to the proceeds of a settlement recovery received by the insured from his tortfeasor. Second, derivative of the legal right which the first part of § 3902(a)(4) creates in the subrogee-insurer, to the proceeds of an insured's settlement recovery, is an equitable right directly against the tortfeasor.

The second part of § 3902(a)(4), the limitation proviso, expressly limits the subro-

gee-insurer's legal right against the insured. In *Maldonado, supra,* where the subrogee-insurer brought an action directly against the tortfeasor for the excess paid over minimum coverage, pursuant to the subrogee-insurer's equitable right against the tortfeasor, the Delaware Supreme Court held that the limitation proviso of § 3902(a)(4) limited that equitable right. In so holding, the Supreme Court merely recognized that the subrogee-insurer's equitable right against the tortfeasor was derivative of the subrogee-insurer's legal right against the insured. If the subrogee-insurer's legal right against the insured is limited by the limitation proviso of § 3902(a)(4), as it clearly is, then the subrogee-insurer's equitable right against the tortfeasor which is derivative of the limited legal right against the insured, must likewise be limited by the limitation proviso of § 3902(a)(4).

It is evident that the limitation proviso of § 3902(a)(4) accords a tortfeasor no direct protection. Rather, a tortfeasor benefits from the limitation proviso only by virtue of the fact that the subrogee-insurer's equitable right against him is derivative of the subrogee-insurer's legal right against the insured, which is directly subject to the limitation proviso.

 In the present case, neither the legal right of the subrogee-insurer against the insured, nor the equitable right of the subrogee-insurer against the tortfeasor, the rights involved in *Maldonado* are in issue. The procedural posture of the present case has the insured seeking to enforce *his* legal right against the tortfeasor. The defendants and third-party defendants contend, however, that § 3902(a)(4) accords them a shield that they

may raise against the insured's legal right. The Court does not agree. The limitation proviso of § 3902(a)(4) only protects: (1) the insured against the legal right which the subrogee-insurer has against the insured, and (2) the tortfeasor (indirectly) against the equitable right which the subrogee-insurer has against the tortfeasor. It can hardly be said that the protective shield which the limitation proviso of § 3902(a)(4) was intended to accord the insured against the subrogee-insurer can be turned against the insured himself by the tortfeasor.

One might argue, however, that the Court should, in the present case, disregard Mr. Sinex' legal right against the defendants and third-party defendants, treat Nationwide as the real party in interest, treat the action as one by Nationwide enforcing its equitable rights against the defendants and third-party defendants, and apply the limitation proviso of § 3902(a)(4) at this stage of the action. The facts, however, may yet establish that Mr. Sinex has a continuing interest in the outcome of the instant action.[2] To the extent that Mr. Sinex still possesses some legal right against the defendants and third-party defendants, according to the defendants and the third-party defendants, the protection of the limitation proviso of § 3902(a)(4) may prejudice that right of Mr. Sinex.[3]

In light of the foregoing, the defendants' and third-party defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

**2.** That Mr. Sinex may have a continuing legal right against the defendants and third-party defendants appears to be the result of an occurrence that distinguishes the present case from *Maldonado, supra.* In *Maldonado,* the settlement between the insured and the tortfeasor pre-dated the insurance carrier's subrogation. Thus prior to the insurance carrier's subrogation, the insured, as a part of the settlement, released all claims against the tortfeasor; and, the insurance carrier had to sue pursuant to its equitable right against the tortfeasor. In the present case, there has been no settlement and

release by the insured and, thus, the subrogation action has been brought pursuant to the insured's legal right against the defendants and third-party defendants.

**3.** Additionally, the actual effect of a ruling adopting defendant's position would be to transfer liability from the tort-feasor's insurance carriers to the injured party's insurance carrier whenever that carrier decided to pay out under an uninsured or underinsured provision, an absurd result.