**DELMAR NEWS, INC., a Delaware Corporation, Plaintiff,**

v.

**JACOBS OIL COMPANY, a Delaware Corporation and Maryland Casualty Company, Defendants.**

Superior Court of Delaware, New Castle County.

Submitted: July 6, 1990.
Decided: Aug. 10, 1990.

William J. Wier, Jr. of Wier & Halberstadt, Wilmington, for plaintiff.

Robert J. Katzenstein, and Terence Chu, of Lassen, Smith, Katzenstein & Furlow, Wilmington, for defendant Maryland Cas. Co.

## OPINION

BARRON, Judge.

Before the Court is a motion to dismiss the complaint of Plaintiff Delmar News, Inc. (Delmar) filed by Defendant Maryland Casualty Company (MCC) pursuant to Superior Court Civil Rule 12(b)(6).[1] Stated generally, the fundamental issue upon which MCC's motion turns is whether or not an injured third-party may maintain a direct action against the wrongdoer's liability insurance carrier prior to a determination that the insured is liable. Before specifically addressing this issue as well as the other arguments of the parties with respect thereto, a brief recitation of the facts is in order.

### I.

In October, 1984, Jacobs Oil Company (Jacobs) allegedly made a delivery of 1,000 gallons of gasoline to a storage area located on Delmar's property. According to Delmar, Jacobs improperly and without permission, pumped this gasoline into an unused storage tank and, as a result, nearly all of the 1,000 gallons leaked out of the tank and on to the ground surrounding the tank. At the time of this mishap, Jacobs was insured by MCC.

Delmar further alleges that after the spill, MCC, acting as Jacobs' insurer, negotiated and made a partial payment for the initial clean up work done to stabilize the contaminated area. Since that time, Delmar has allegedly incurred additional expenses totalling $76,616.60 as a result of further clean up and disposal measures performed to correct the condition allegedly caused by Jacobs. Aside from the

---

1. Because matters outside the pleadings have been presented to and not excluded by the Court, MCC's motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. *See* Superior Court Civil Rule 12(b)(6).

initial payment by MCC, Delmar avers that it has not been reimbursed either by Jacobs or MCC for the expenses incurred in order to restore the contaminated site.

On November 22, 1989, Delmar filed this action naming Jacobs and MCC as party defendants in an effort to recover, among other things, its expenses incurred as a result of Jacobs' alleged negligent conduct. On May 30, 1990, MCC filed the instant motion to dismiss Delmar's complaint pursuant to Superior Court Civil Rule 12(b)(6) on the grounds that, as to MCC, Delmar's complaint fails to state a claim upon which relief can be granted.

## II.

■ For purposes of a motion for summary judgment, the moving party has the burden of demonstrating, with reasonable certitude, that there is no genuine issue as to any material fact and thus he is entitled to judgment as a matter of law. *Matas v. Green*, Del.Super., 171 A.2d 916 (1961). A party opposing a motion for summary judgment must come forward with admissible evidence showing the existence of a genuine issue of fact. *E.K. Geyser Co. v. Blue Rock Shopping Center, Inc.*, Del.Super., 229 A.2d 499 (1967).

## III.

As indicated earlier, the question is whether or not, under the circumstances of this case, MCC can be joined as a party defendant and sued in tort for the alleged negligent conduct of Jacobs, prior to a determination that Jacobs is in fact liable to Delmar for the damage to its property arising from the gasoline spill. MCC's approach to this question is two-fold. First, MCC argues that the law in Delaware is that direct actions against an insurer based on the negligence of its insured are not permitted. Next, MCC argues that even assuming such actions are permitted, Delmar's claim against it in this action is barred by a "no action against company" clause (no action clause) contained in the insurance contract between MCC and Jacobs.

In response, Delmar does not address head on the issue of the permissibility of direct actions against insurers. Rather, Delmar claims first that it is a third-party beneficiary of the insurance contract between Jacobs and MCC and is therefore entitled to sue MCC thereon. Second, Delmar argues that by negotiating the claim and paying for the initial clean up costs, MCC is estopped from denying liability, and that this same conduct constitutes a waiver of the no action clause in the contract as well as an admission of direct liability for Delmar's losses.

## IV.

### A. *Direct Action*

■ In support of its argument that Delaware does not permit direct actions against insurers in situations such as this, MCC offers the case of *Kaufmann v. McKeown*, Del.Supr., 193 A.2d 81 (1963). While *Kaufmann* dealt primarily with the application of the Dead Man's Act, the Court briefly, but squarely, addressed the issue of whether or not an injured party could maintain a direct action against an insurer for the negligent acts of its insured. The Court stated:

> "A liability insurer may well be the real party in interest, but this is not a State where a direct action is permitted against it. Plaintiff is obliged to bring his suit against the tortfeasor or in the event of her demise, her estate."

*Id.* at 83.

Aside from *Kaufmann*, the parties herein have not identified and the Court has not uncovered any Delaware case law which specifically addresses this issue. Other jurisdictions, however, apply a similar rule. In *Dept. of General Serv. v. Celli–Flynn*, 115 Pa.Cmwlth. 494, 540 A.2d 1365 (1988), the Court specifically faced this issue and concluded that Pennsylvania law, in the absence of a statutory or policy provision to the contrary, does not permit an injured party to maintain a direct action against the tortfeasor's insurer. *Id.* 540 A.2d at 1367. In fact, the holding in *Kaufmann, supra* and *Department of General Services, supra,* appears to be the general rule

followed by most jurisdictions. *See: Caster v. Board of Education of Albuquerque*, 86 N.M. 779, 527 P.2d 1217 (1974); *Manukas v. America Ins. Co.*, 98 N.J.Super. 522, 237 A.2d 898 (1968); *Gorman v. St. Paul Fire & Marine Insurance Co.*, 210 Md. 1, 121 A.2d 812 (1956). *See also* 44 Am.Jr.2d, *Insurance*, § 1445 (1982); 8 Appleman, *Insurance Law and Practice*, § 4861 (1981). The rationale behind this rule appears to be simply that the Courts feel that it would not be sound public policy to permit an insurer to be joined as a defendant in an action grounded upon the acts of the insured. *See* Appleman § 4861 at 565.

Therefore, on the authority of *Kaufmann, supra,* and in light of the position taken by other jurisdictions on this issue, the Court concludes that the law in Delaware is that Delmar may not, at this time, maintain a direct action against MCC grounded upon the alleged negligence of Jacobs.[2] Delmar's personal injury action must first be brought against the alleged tortfeasor—in this case Jacobs. Even if Delmar were permitted to sue MCC directly, it would obtain little advantage since Jacobs' liability for negligence must still be proved in an action against MCC. On this basis it cannot be said that the Court's conclusion results in unfairness to Delmar.

### B. Third–Party Beneficiary

■ It is settled law in Delaware that a third-party may recover on a contract made for his benefit. *Ins. Co. of North America v. Waterhouse*, Del.Super., 424 A.2d 675 (1980) citing *Royal Indemnity Co. v. Alexander Industries, Inc.*, Del.Supr., 211 A.2d 919 (1965). However, in order for there to be a third-party beneficiary, the contracting parties must intend to confer a benefit. *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver, Inc.*, Del.Super., 312 A.2d 322 (1973). Where it is the intention of the promisee to secure a performance for the benefit of another, either as a gift or in satisfaction of an obligation to that person, and the promisee makes a contract to do so, then such a third person has the right to enforce the contract against the promisor. *See generally* Restatement of Contracts (Second) § 302 (1979). If, however, the parties to the contract did not intend to benefit the third-party but the third-party happens to benefit from the performance of the contract either indirectly or coincidentally, such third person has no rights under the contract. *Insituform of North America v. Chandler*, Del.Ch., 534 A.2d 257 (1987).

The controlling question, therefore, becomes whether Delmar was an intended beneficiary of the insurance contract between MCC and Jacobs or whether it was merely an indirect beneficiary. In the former case, Delmar could enforce the contract against MCC, while in the latter, it could not.

■ Delmar's third cause of action states, among other things, that "Delmar News, as the owner of the injured property is a third-party beneficiary to the losses sustained." This, however, aside from stating a legal conclusion, falls far short of establishing that Delmar was an intended beneficiary of the insurance contract. Delmar has not pled that it was named or otherwise identified in the contract, nor has it pled any facts which could reasonably lead to the inference that it was an intended beneficiary of the insurance contract between Jacobs and MCC. At best, the record establishes that Delmar is an indirect beneficiary of the insurance contract in that if Jacobs is eventually found to have been negligent, Delmar may have the right to receive payment for its losses from MCC. This, in my view, without more, is insufficient as a matter of law to establish that Delmar is a third party beneficiary entitled to sue MCC directly on the insurance policy.[3]

2. Given the Court's conclusions with respect to this issue, it is unnecessary to address MCC's argument about the effect of the no action clause contained in the insurance policy.

3. Even assuming the existence of a third-party beneficiary relationship, Delmar's argument would still be unavailing. It is axiomatic that a third-party beneficiary to a contract can have no greater rights under the contract than the signatories thereto. *See* 2 *Williston on Contracts*, Third Edition, Section 364A (1959). Since Jacobs, as promisee, may not now bring an action

## C. *Estoppel*

■ Applied to prevent injustice, estoppel arises when a party to a transaction by word, deed or silence conducts himself in such a manner that the law forbids enforcement of a claim but for the estoppel. *Harmony Mill Limited Partnership v. Donald C. Magness, et al.*, Del.Super., C.A. No. 84C–OC–40, Barron, J., 1990 WL 58149 (May 1, 1990) citing *Timmons v. Campbell*, Del.Ch., 111 A.2d 220 (1955). To establish an estoppel, it must appear that the party claiming the estoppel lacked knowledge and the means to acquire knowledge of the truth of the facts in question, that he relied on the conduct of the party against whom the estoppel is claimed, and that he suffered a prejudicial change in position in consequence thereof. *Wilson v. American Insurance Company*, Del.Supr., 209 A.2d 902, 904 (1965).

■ As it exists in the complaint and the papers submitted in opposition to the instant motion, Delmar's claim of estoppel is grounded upon the fact that MCC negotiated and paid for the initial clean up measures taken to stabilize the area surrounding the fuel tank. In my view, this conduct is insufficient to establish an estoppel. Assuming, *arguendo*, that Delmar was without knowledge or the means to determine who was liable for its loss, and that MCC's conduct led Delmar to believe that MCC considered itself to be directly liable, there is still no showing that Delmar relied to its detriment as a consequence thereof. This is not a situation in which MCC induced or authorized Delmar to clean up the site with a promise of reimbursement and then after the work was completed, reneged on the promised reimbursement. Most of the expenses which Delmar seeks to recover in this action were incurred at the direction of the Department of Natural Resources and Environmental Control. Therefore, it cannot be said that MCC's previous payments induced Delmar to incur these expenses where it would not otherwise have done so. Moreover, there is also no showing that MCC's conduct has prejudiced Delmar in any way. Delmar is still capable of pursuing its negligence claims against Jacobs, and if liability exists, Delmar will presumably be made whole. Therefore, on this basis, the Court concludes that Delmar has not established an estoppel.

## D. *Waiver and Admission of Liability*

■ Delmar claims that by previously negotiating the claim and paying for the initial clean-up, MCC has impliedly waived its right to enforce the no action clause against Delmar. Furthermore, according to Delmar, MCC's initial payment constitutes an admission of direct liability by MCC for the losses incurred as a result of Jacobs' alleged negligence.

Waiver is a voluntary and intentional relinquishment of a known right. *Realty Growth Inv. v. Council of Unit Owners*, Del.Supr., 453 A.2d 450, 456 (1982) citing 28 Am.Jur. *Estoppel and Waiver*, § 158 (1966); *George v. Frank A. Robino, Inc.*, Del.Supr., 334 A.2d 223, 224 (1975). It implies knowledge of all material facts and an intent to waive. *Id.* citing *Klein v. American Luggage Works, Inc.*, Del.Supr., 158 A.2d 814, 818 (1960). The facts relied upon must be unequivocal in character. *Moore v. Travelers Indem. Ins. Co.*, Del. Super., 408 A.2d 298, 301 (1979). Even assuming that MCC's conduct does constitute a knowing, voluntary and intentional relinquishment of its contractual right to enforce the no action clause, the Court concludes that this fact is of no consequence. In order for a finding of waiver to be of consequence in this case, Delmar must show that it has the right to enforce the underlying insurance policy in the first place. Unless Delmar is vested with this right, MCC's waiver of the no action clause simply becomes irrelevant to the question of whether Delmar can sue MCC in a direct action. Because Delmar is neither a party to nor a third-party beneficiary of the insurance policy, it has no right to sue MCC in an effort to enforce any part of the

---

against MCC because of the no action clause, it follows that even if Delmar were a third-party beneficiary of the insurance policy, it too would be similarly precluded from bringing this action.

policy regardless of whether MCC waived any rights it had thereunder. Therefore, the Court concludes that the doctrine of waiver under the circumstances of this case does nothing to preserve Delmar's direct cause of action against MCC.

As indicated, Delmar also argues that MCC's payment for the initial clean up costs constitutes an admission of liability. Given the rule that an injured party may not maintain a direct action against an insurer absent a determination that the insured is liable, the question becomes whether by admission or otherwise, MCC's conduct amounts to a determination of Jacobs' liability for Delmar's losses such that Delmar may maintain this action directly against MCC. In *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 299 N.E.2d 295 (1973) the Court of Appeals of Ohio faced a similar question. In *Chitlik*, Allstate made preliminary direct payments to an injured party for property damage sustained as a result of an auto accident with Allstate's insured. No payments were made or demanded for personal injuries until the extent of those injuries were fully determined. The injured party ultimately filed a direct action against Allstate seeking to recover for his personal injuries and claimed, among other things, that Allstate's act of paying the property damages claim constitutes an admission of liability for all damages by Allstate. In rejecting this argument, the Court reiterated the longstanding rule that a party injured in a personal injury action must first sue the alleged tortfeasor and if a judgment is obtained, the injured party may proceed in a direct action against the insurer. *Id.* 299 N.E.2d at 298.

With regard to whether Allstate's earlier payments constituted an acknowledgment of liability, the Court held:

"This argument is not well taken. The reasons set out above requiring that an injured person sue the insurer directly only after he obtains a judgment against the insured, apply equally in the foregoing situation.... When a person against whom a claim is brought makes a settlement with the claimant, such person does not thereby acknowledge liability.... Therefore payment of a claim for property damages is not tantamount to obtaining a judgment against the insured which would permit a direct action ..."

*Id.* 299 N.E.2d at 298, 299.

Consistent with the holding in *Chitlik*, the Court concludes that MCC's act of paying for the initial clean up costs was not an admission of its own liability nor was it a determination of Jacobs' liability which would support a direct action against MCC by Delmar.

### V.

There being no material facts in dispute, the Court finds that MCC is entitled to summary judgment as a matter of law. MCC's motion for summary judgment is, therefore, Granted.

It Is So ORDERED.