# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| PATRICIA BROADWAY, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ALLSTATE PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| Defendant, | ) | C.A. No N14C-07-052 PRW |
| Third-Party Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MARCIA CALDWELL, | ) | |
| DIVEADRA MARIA MORRIS, and | ) | |
| INFINITY INSURANCE COMPANY, | ) | |
| Third-Party Defendants. | ) | |

Submitted: May 20, 2015
Decided: August 11, 2015

## <u>MEMORANDUM OPINION</u>

*Upon Third-Party Defendant Infinity Insurance Company's Motion to Dismiss*,
**GRANTED.**


L. Vincent Ramunno, Esquire, Ramunno & Ramunno, P.A., Attorney for Plaintiff.

Arthur D. Kuhl, Esquire, Reger Rizzo & Darnall LLP, Wilmington, Delaware, Attorney for Defendant/Third-Party Plaintiff Allstate Property and Casualty Insurance Company.

Norman H. Brooks, Jr., Esquire, Brett T. Norton, Esquire, (Argued), Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., Wilmington, Delaware, Attorneys for Third-Party Defendant Infinity Insurance Company.

**WALLACE, J.**

## I.    INTRODUCTION

Plaintiff, Patricia Broadway, filed this instant action seeking uninsured motorist ("UM") benefits from her insurer, Defendant, Allstate Property and Casualty Insurance Company ("Allstate").  Allstate denied her UM claim and has brought a third-party action against the alleged tortfeasors in the underlying action, Diveara Morris and Marcia Caldwell, and Ms. Caldwell's liability insurance carrier, Infinity Insurance Company ("Infinity").  Infinity now moves to dismiss the Third-Party Complaint on the grounds that Allstate has no standing to maintain a direct action against it.  For the reasons described below, Infinity's Motion to Dismiss is **GRANTED**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Underlying Action

This case arises out of a December 29, 2013 motor vehicle accident in Delaware.  Ms. Broadway, a Delaware resident, was injured in that accident when her vehicle collided with another vehicle driven by Diveadra Morris.  At the time of the accident, Ms. Morris's mother, Ms. Caldwell, owned the vehicle.  Ms. Caldwell was and is a Pennsylvania resident.  She garages the vehicle in Pennsylvania, and she entered into a contract for liability insurance with Infinity

2

under Pennsylvania's financial responsibility laws.[1] Ms. Morris was allegedly a permissive user of Ms. Caldwell's vehicle.[2]

Infinity declined to extend liability coverage to Ms. Morris for the accident based on an exclusion in Ms. Caldwell's policy. That exclusion related to Ms. Morris's possession of the vehicle for more than 24 hours in a policy period. Infinity, therefore, considered Ms. Morris an uninsured driver at the time of the accident.

Ms. Broadway then filed a claim for uninsured motorist benefits against Allstate. Allstate has denied that claim.[3]

## B. Declaratory Judgment Action

Allstate then brought a Third-Party Complaint against Infinity, Ms. Morris, and Ms. Caldwell. That Complaint alleged Ms. Morris was a permissive driver and thus Infinity was required to provide her liability coverage under 21 *Del. C.* § 2118 (b) (relating to minimum coverage requirements). Allstate averred Infinity wrongfully denied Ms. Morris coverage and sought a declaratory judgment against Infinity.

---

[1] Def.'s Am. Ans. to Compl. With Affirmative Defenses and Third-Party Compl. for Indemnification and Third-Party Claim for Declaratory Judgment to Determine Coverage ("Am. Third-Party Compl.") (D.I. 26; Trans. I.D. 56766411) ¶ 33.

[2] *Id.* ¶ 22.

[3] *See generally id.* ¶¶ 8-16. Allstate confirmed its denial of Ms. Broadway's UM benefits claim at oral argument on this motion.

Infinity moved to dismiss Allstate's Third-Party Complaint for lack of standing and, in the alternative, moved for a more definite statement as to the basis for Allstate's standing. The Court granted the motion to dismiss in part on January 26, 2015 and required any amended complaint to include a more definite statement as to Allstate's standing in its declaratory judgment action.[4]

Allstate then filed an Amended Third-Party Complaint, in which it alleged, *inter alia*: it suffered an actual, concrete, and particular injury; the injury is causally related to Infinity's liability coverage denial; the injury is redressable by an order compelling liability coverage; Allstate has a subrogation right against Infinity in the event of settlement or payment; and Allstate stands in the shoes of Infinity's insureds, the alleged tortfeasors.[5] Allstate now asks this Court to enter a declaratory judgment ordering Infinity to provide liability coverage to Ms. Morris and Ms. Caldwell for the underlying motor vehicle accident.[6]

Infinity has moved again to dismiss the Third-Party Complaint pursuant to Superior Court Civil Rules of Procedure 12(b)(1) and 12(b)(6) on the grounds that

---

[4] Order on Third-Party Defendant Infinity Insurance Co.'s Motion to Dismiss or For a More Definite Statement, Jan. 26, 2015, (D.I. 25; Trans. I.D. 56664212).

[5] Allstate further alleges that in the event Ms. Morris and Ms. Caldwell are found to be uninsured and negligent in the underlying action, they are both liable for indemnification to Allstate through its right of subrogation. *See* Am. Third-Party Compl. ¶¶ 20, 27.

[6] Am. Third-Party Compl. at 7.

Allstate continues to lack standing in the declaratory judgment action, despite its amendment. Plaintiff Broadway takes no position on the motion.

## III. STANDARD OF REVIEW

Defendants may move to dismiss under Superior Court Rule of Civil Procedure for, *inter alia* "failure to state a claim upon which relief can be granted"[7] or "[l]ack of jurisdiction over the subject matter."[8] Standing is a threshold question relating to jurisdiction.[9] But, where "the issue of standing is so closely related to the merits, a motion to dismiss based on lack of standing" is properly evaluated for its failure to state a claim rather than a lack of jurisdiction.[10] The Court will do so here.

In reviewing a motion to dismiss a complaint under Rule 12(b)(6), the Court accepts well-pleaded allegations as true and draws all reasonable inferences in the

---

[7] Super. Ct. Civ. R. 12(b)(6).

[8] Super. Ct. Civ. R. 12(b)(1).

[9] *See Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) ("The term 'standing' refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or to redress a grievance."). *See also*, *Stevenson v. Delaware Dep't of Natural Res. & Envtl. Control*, 2014 WL 4937023, at *3 (Del. Super. Ct. Sept. 22, 2014) (ruling on motion to dismiss under both Rule 12(b)(6) and Rule 12(b)(1)).

[10] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1286 (Del. 2007) ("[W]here a party is not arguing that the court lacks the authority to grant the relief requested to any plaintiff (i.e., lacks subject matter jurisdiction), but rather is arguing that the court cannot grant relief to these particular plaintiffs, the motion is more properly decided under Rule 12(b)(6) because the plaintiff has failed to plead a necessary element of a cognizable claim, not because the court does not have jurisdiction.").

light most favorable to the non-moving party.[11] Dismissal is appropriate "only where it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief."[12] "To survive a motion to dismiss, the complaint need only give general notice of the claim asserted."[13]

## IV. Discussion

### A. The Elements of Standing

"The concept of 'standing,' in its procedural sense, refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance."[14] It is concerned with the question of *who* is the proper party entitled to mount a legal challenge.[15] State courts apply the concept of standing "as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are 'mere intermeddlers.'"[16] Ordinarily, a litigant must assert his or

---

[11] *Doe 30's Mother v. Bradley*, 58 A.3d 429, 443 (Del. Super. Ct. 2012) (citations omitted).

[12] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).

[13] *Id.*

[14] *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991) (citing 59 AM. JUR. 2D *Parties* § 30 (1989)).

[15] *Id.*

[16] *Id.* (citation omitted).

her own legal rights and interests are at stake—not a claim to relief on the legal rights or interests of third parties.[17]

The Delaware Supreme Court has recognized the United States Supreme Court's standing requirements set forth in *Lujan v. Defenders of Wildlife* as generally the same for Delaware state courts.[18] To bring an action in Delaware, a plaintiff must establish standing by showing: (1) an injury-in-fact—to a legally protected interest—that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) that the claim is redressable by a favorable decision.[19]

Infinity contends Allstate has failed to set forth facts sufficient to support its basis for standing, specifically as to an injury to a legally protected interest.[20] It claims Allstate, as the UM carrier, cannot under Delaware law maintain a direct action against a tortfeasor's liability carrier. In its view, Allstate has no direct right of action to compel Infinity to provide liability coverage to Ms. Morris. Allstate must demonstrate it has standing by establishing it has a direct right of action

---

[17]    *Amato v. Wilentz*, 952 F.2d 742, 748 (3d Cir. 1991) (citing *Powers v. Ohio,* 499 U.S. 400, (1991)).

[18]    *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1111 (Del. 2003).

[19]    *See id.* at 1110.

[20]    *Id.*

7

against Infinity either under the UM statute or as a third-party beneficiary of the Ms. Caldwell-Infinity contract.[21]

## B. Delaware's UM Statute Does Not Confer Standing to a UM Carrier in a Direct Action to Compel Liability Coverage.

Delaware's Uninsured Motorist statute, 18 *Del. C.* § 3902, provides for "uninsured vehicle coverage"[22]—supplemental insurance to protect innocent persons injured in motor vehicle accidents from financially irresponsible tortfeasors.[23] Generally, UM statutes are "designed for the benefit of insureds and not insurers."[24] The UM statute is further not intended to afford coverage to the uninsured motorist but rather to provide protection for the insured driver against the negligence of an uninsured motorist.[25] An "uninsured vehicle" includes "one for which the insuring company denies coverage."[26]

---

[21] *See Empire Fire & Marine Ins. Co. v. Miller*, 2012 WL 1151031, at *4 (Del. Com. Pl. Apr. 5, 2012).

[22] DEL. CODE ANN. tit. 18, § 3902(a)(1) (2015).

[23] *See Lomax v. Nationwide Mut. Ins. Co.*, 964 F.2d 1343, 1346 (3d Cir. 1992) ("UM coverage . . . is designed to compensate innocent persons injured by an automobile who are unable to obtain recompense from unknown or impecunious negligent tortfeasors. . ."); *Cropper v. State Farm Mut. Auto. Ins. Co.*, 671 A.2d 423, 425 (Del. Super. Ct. 1995), *aff'd*, 676 A.2d 907 (Del. 1995); *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 42 (Del. 1991).

[24] 8A STEVEN PLITT, DANIEL MALDONADO, JOSHUA D. ROGERS, & JORDAN R. PLITT, COUCH ON INSURANCE § 122:11 (3d ed. 2015).

[25] *Id.*

[26] § 3902(a)(3)(b); *see also Taber v. Goodwin*, 2012 WL 2106374, at *2 (Del. Super. Ct. June 5, 2012).

The language of § 3902 says nothing about an uninsured motorist insurance carrier's ("UM carrier") right of action against a tortfeasor's liability carrier. It does, however, provide a statutory right to subrogation.[27] Section 3902 entitles the insurer:

> [i]n the event of payment to any person under uninsured vehicle coverage . . . [to] the proceeds of any settlement recovery *from any person legally responsible for the bodily injury or property damage* as to which such payment was made and to amount recoverable from the assets of the insolvent insurer of the other vehicle; provided, that this right of subrogation is limited to the amount of coverage required by the financial responsibility law.[28]

The subrogee-insurer is thereby vested with "two distinct rights": (1) "a legal right to the proceeds of a settlement recovery received by the insured from his tortfeasor"; and (2) "an equitable right directly against the *tortfeasor*."[29] The plain language of the statute—"any person legally responsible"—cannot be read to confer a subrogation right against the tortfeasor's liability carrier.[30] And this Court

---

[27] § 3902(a)(4); *see also Home Ins. Co. v. Maldonado*, 515 A.2d 690, 696 (Del. 1986); *Sinex v. Wallis*, 565 A.2d 1384, 1388 (Del. Super. Ct. 1988) (recognizing § 3902(a)(4) creates a "right of subrogation in an insurance carrier who has made payment to an insured under an uninsured motorist clause").

[28] DEL. CODE ANN. tit. 18, § 3902(a)(4) (2014) (emphasis added).

[29] *Sinex*, 565 A.2d at 1388 (emphasis added).

[30] § 3902(a)(4); *Cf. Northland Ins. Co. v. Virginia Prop. & Cas. Ins. Guar. Assoc.*, 392 S.E.2d 682, 685 (Va. 1990) (noting earlier Virginia Supreme Court case held the UM carrier had no subrogation right against the tortfeasor's insurance carrier because an earlier version of Virginia's UM statute did not provide for it).

9

has previously interpreted that language to mean the tortfeasor, not his or her liability carrier, is the proper party to a subrogation claim.[31] Thus, the statutory language of § 3902(a)(4) establishes no direct subrogation right against an uninsured motorist's liability carrier.

Moreover, Allstate's insistence that it may directly sue Infinity at this time does not comport with the "bedrock" principles of subrogation.[32] A subrogee-insurer stands in the shoes of *its* insured.[33] And its rights are limited to those of *its*

---

[31] *Kennedy v. Encompass Indem. Co.*, 2012 WL 4754162, at *4 (Del. Super. Ct. Sept. 28, 2012) ("The plain language of Section 3902(a)(4) contemplates that the tortfeasor, rather than the tortfeasor's insurance carrier, is the proper party to a subrogation claim, as the tortfeasor is the party *legally responsible* for the bodily injury."). The Court noted that to allow a UM carrier to seek subrogation directly against the tortfeasor's liability carrier "runs contrary to the principles underlying *uninsured* motorist benefits." *Id.* at *4 n.25. *But see Kimball v. Penn Mut. Ins. Co.*, 2007 WL 315339, at*2 (Del. Super. Ct. Jan. 31, 2007) ("Due to its subrogation right with regard to . . . potential [UM] payments, [the UM carrier] has standing to challenge the validity of [the tortfeasor's liability carrier's] denial of liability coverage and seek contribution for UM benefits it may be required to pay on behalf of the [insureds] as a result thereof.") Certain salient facts in *Kimball* differ, however. For instance, there the UM carrier unconditionally accepted its insured's UM claim. *Id.* With such acceptance, that UM carrier's potential subrogation right, the Court found, arose "from the fact that it is faced with the possibility of having to pay UM benefits to the insureds as a result of the [liability carrier's] alleged wrongful denial of liability coverage to the tortfeasor." *Id.* Allstate has not unconditionally accepted Ms. Broadway's claim for UM benefits—it disputes its own liability to her under the UM contract. Thus, it cannot be said that Allstate now faces the imminence of payment that the *Kimball* UM carrier did.

[32] *See Sinex*, 565 A.2d at 1388; *Great Am. Assurance Co. v. Fisher Controls Inter'l, Inc.*, 2003 WL 21901094, at *4 (Del. Super. Ct. Aug. 4, 2003) (discussing the "bedrock principle of subrogation . . . that the 'insurer who subrogates himself to his insured stands in the shoes of his insured and can take nothing by subrogation but the rights of the insured.'") (quoting *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.*, 418 F. Supp. 56, 58 (N.D. Tex. 1976)).

[33] *Great Am. Assurance Co.*, 2003 WL 21901094, at *4.

10

insured.[34] Even its insured—the injured party—cannot maintain a direct action against a tortfeasor's liability carrier under Delaware law.[35]

Yet, Allstate argues, because it stands in the shoes of the tortfeasor, it has standing to compel Infinity (the tortfeasor's insurer) to provide coverage.[36] Indeed, the UM carrier stands in the shoes of the absent tortfeasor for the purpose of providing coverage *to its own insured*.[37] But the focus of this case is whether Allstate can stand in the tortfeasor's shoes to maintain a direct action against the tortfeasor's liability carrier, essentially interjecting itself into the contractual relationship between the tortfeasor and his or her liability carrier. Neither § 3902(a)(4) nor the principles of subrogation permit that on these facts. Allstate

---

[34]    *Id.*; *see also Reserves Devel. LLC v. Severn Sav. Bank, FSB*, 2007 WL 4054231, at *17 (Del. Ch. Nov. 9, 2007) (discussing principles of equitable subrogation).

[35]    *Walden v. Allstate Ins. Co.*, 2006 WL 3041848, at *1 (Del. Oct. 27, 2006) ("under Delaware law, an injured third party may not prosecute a direct action against a liability insurer on the basis of the alleged negligence of an insured before a determination of the insured's liability"); *Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 534 (Del. Super. Ct. 1990) (applying principle from *Kaufmann v. McKeown*, 193 A.2d 81 (Del. 1963)).

[36]    Def./Third-Party Pl.'s Resp. Br. at 3.

[37]    *Withrow v. Spears*, 2013 WL 5615573, at *4 (D. Del. Oct. 15, 2013) ("The insurance carrier providing the UM coverage stands in the shoes of the absent tortfeasor as a source of payment to the injured person"); *Price v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1213292, at *6 (Del. Super. Ct. Mar. 15, 2013) *aff'd*, 2013 WL 5178520 (Del. Sept. 13, 2013) (noting insurer stands in shoes of uninsured tortfeasor, which "necessarily involves a somewhat adverse relationship between the insured and the insurer"); *Evans v. Stuard*, 1989 WL 167406, at *2 (Del. Super. Ct. Oct. 6, 1989) (UM carrier placed in position of absent tortfeasor "as a source of payment to the victim"). *Cf. Sinex*, 565 A.2d at 1389 (the "subrogee-insurer's equitable right against the tortfeasor was derivative of the subrogee-insurer's legal right against the insured.").

has made no payments to its insured[38]—in fact it disputes the UM claim. Nor has there been an adjudication of liability or judgment against the tortfeasor.[39] Thus, Allstate has no standing here to maintain a direct action against Infinity, the liability carrier for the alleged uninsured tortfeasors Ms. Morris and Ms. Caldwell.

## C. Allstate Has No Third-Party Right to Compel Coverage.

Contract law governs the aspects of uninsured motorist claims not controlled by the facts from the underlying accident.[40] Thus, the Court may look to principles of contract law to determine whether Allstate has standing to compel Infinity's performance of Infinity's liability insurance contract with Ms. Caldwell.

A third-party who is not a named insured may still be able to recover on an insurance policy made for his or her benefit.[41] The third-party seeking recovery must, however, be an intended beneficiary.[42] In order to be an intended beneficiary, the contracting parties must have intended to confer a benefit on the

---

[38]    *See Reserves Devel. LLC*, 2007 WL 4054231, at *17 (subrogation right arises provided that "payment must have been made by the subrogee to protect his or her own interest").

[39]    *See Kennedy v. Encompass Indem. Co.*, 2012 WL 4754162, at *4 (Del. Super. Ct. Sept. 28, 2012).

[40]    *Rapposelli v. State Farm Mut. Auto. Ins. Co.*, 988 A.2d 425, 428-29 (Del. 2010).

[41]    *Willis v. City of Rehoboth Beach*, 2004 WL 2419143, at *1 (Del. Super. Ct. Oct. 14, 2004) (recognizing exception to rule); *Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 534 (Del. Super. Ct. 1990) ("It is settled law in Delaware that a third-party may recover on a contract made for his benefit."); *Empire Fire & Marine Ins. Co. v. Miller*, 2012 WL 1151031, at *5 (Del. Com. Pl. Apr. 5, 2012).

[42]    *Willis*, 2004 WL 2419143, at *2.

12

third-party.[43] But if the third-party "happens to benefit from the performance of the contract either indirectly or coincidentally, such third person has no rights under the contract."[44]

The Court must look to the language of the liability insurance policy to determine the intent of the parties and whether an injured party is a third-party beneficiary.[45] If a liability insurance policy explicitly permits direct suits against the insurer prior to obtaining a judgment against the tortfeasor, that direct action is permitted.[46] But if a policy prohibits such direct actions by third parties, "the intent would be clear on the face of the policy . . . [and] a direct action would not be allowed.[47] "Without language to the contrary in the policy, injured parties are merely incidental beneficiaries and have no right under the policy to sue the liability insurer until a judgment has been obtained against the insured."[48]

Allstate here has not established that it is an intended third-party beneficiary to the Ms. Caldwell-Infinity insurance contract such that it has standing to pursue

---

[43] *Delmar News*, 584 A.2d at 534.

[44] *Id.*

[45] *Greater New York Mut. Ins. Co. v. Travelers Ins. Co.*, 2011 WL 4501207, at *3 (D. Del. Sept. 28, 2011); *Willis*, 2004 WL 2419143, at *2.

[46] *Willis*, 2004 WL 2419143, at *2.

[47] *Id.*

[48] *Id.*

13

this declaratory judgment action.  The language of the Infinity policy is clear.  It states:

> SUITS AGAINST US
> We may not be sued unless there is full compliance with all terms of this policy.  We may not be sued under Part A of this policy until the obligation of an insured to pay is finally determined either by judgment against the insured or by written agreement of the insured, the claimant, and us.  No one shall have any right to make us a party to a suit to determine the liability of an insured.[49]

As there has been no final judgment in the underlying action, the policy language permitting suit against Infinity has not yet been triggered.  Allstate cannot show on the record before the Court that it was an intended third-party beneficiary to the liability insurance policy between Ms. Caldwell and Infinity.  Nor can it show that Ms. Caldwell assigned her rights under the policy to Allstate.[50]  Thus, Allstate does not have standing as a third-party beneficiary to compel Infinity's performance on its liability insurance contract here.

## V.  CONCLUSION

Because Allstate has not demonstrated it may maintain a direct action against Infinity—either as a subrogee-insurer or as a third-party beneficiary to the

---

[49]     Def's Mot. Dismiss, Ex. 7 at 22.

[50]     *Greater New York Mut. Ins. Co. v. Travelers Ins. Co.*, 2011 WL 4501207, at *3 (D. Del. Sept. 28, 2011) ("If the injured party is neither a named insured nor a third party beneficiary, it cannot recover from the liability insurer unless there has been an assignment of rights. . ."); *see also* 46A C.J.S. *Insurance* § 1994 (2015) (in an assignment, the insured passes legal title to a claim to his or her insurer and the exclusive right to pursue the tortfeasor).

14

liability insurance contract—Allstate is unable to demonstrate an injury to a protected legal interest. Consequently, it cannot meet all of the requisite elements of standing to mount its declaratory judgment action here. Infinity's Motion to Dismiss the Third-Party Complaint is therefore **GRANTED** and Allstate's Third-Party Complaint against Infinity is **DISMISSED, without prejudice.**[51]

    **IT IS SO ORDERED.**


                        */s/ Paul R. Wallace*
                        **PAUL R. WALLACE, JUDGE**


Original to Prothonotary
cc:  All counsel via File & Serve

---

[51]    *See Walden v. Allstate Ins. Co.*, 2006 WL 3041848, at *1 (Del. Oct. 27, 2006).