**REVISED May 8, 2015**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60217

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2015

Lyle W. Cayce
Clerk

Cons. w/ 14-60287

AUTO PARTS MANUFACTURING MISSISSIPPI, INCORPORATED, a
Mississippi Corporation,

        Plaintiff - Appellee

v.

KING CONSTRUCTION OF HOUSTON, L.L.C., a Mississippi Limited
Liability Company,

        Defendant - Appellee

v.

NOATEX CORPORATION, a California Corporation; KOHN LAW GROUP,
INCORPORATED,

        Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Mississippi

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.
STEPHEN A. HIGGINSON, Circuit Judge:

No. 14-60217 c/w No. 14-60287

No member of the panel nor judge in regular active service having requested that the court be polled on Rehearing En Banc, the petition for Rehearing En Banc is DENIED. *See* Fed. R. App. P. and 5th Cir. R. 35. Treating the Petition for Rehearing En Banc as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. We amend the prior opinion, 782 F.3d 186, and the amended opinion is as follows:

Noatex Corp. ("Noatex") and Kohn Law Group, Inc. ("Kohn") appeal two district court decisions in an interpleader action brought by Auto Parts Manufacturing Mississippi, Inc. ("APMM") that named Noatex, King Construction of Houston, L.L.C. ("King"), and Kohn as claimants. Appellants claim that the district court erred in discharging APMM from the action, enjoining all parties from filing any proceedings relating to the interpleader fund without a court order, and in denying their motion to compel arbitration.

## FACTS AND PROCEEDINGS

APMM contracted with Noatex to build an automotive parts factory in Guntown, Mississippi. Noatex hired King as subcontractor to provide services and materials to Noatex. A dispute arose between Noatex and King over the quality of King's work and payments allegedly due to King. On September 23, 2011, King filed a Stop Notice pursuant to Mississippi's Stop Notice statute, Miss. Code Ann. § 85-7-181 (repealed 2014).[1] King informed APMM that Noatex owed King $260,410.15. The Stop Notice had the effect of binding APMM to hold the disputed funds to secure the payments that Noatex allegedly owed to King. *See id.* On October 18, 2011, Noatex filed a complaint in the U.S. District Court for the Northern District of Mississippi against King and its principal alleging that the Stop Notice statute was unconstitutional for

---

[1] King also claimed entitlement to the funds under the Materialman's Lien statute. Miss. Code Ann. § 85-7-131. King was claiming, in the alternative, that it had a direct contractual relationship with APMM, a claim it later dropped.

2

No. 14-60217 c/w No. 14-60287

violating due process.[2]  On November 30, 2011, Noatex filed a second action in federal district court against King and its principal alleging breach of contract, negligence, and conversion.  *Noatex Corp. v. King Constr. of Hous., LLC*, No. 3:11-cv-00152 (N.D. Miss. Nov. 30, 2011), ECF No.1.[3]

On November 15, 2011, APMM filed a complaint for interpleader against King and Noatex in Mississippi state court.  APMM alleged that it was a disinterested stakeholder of the $260,410.15, disclaimed any further right to the funds, alleged that it could be exposed to double liability from the claims of multiple claimants, and alleged that it was unable to determine which of King's and Noatex's claims were valid.  APMM asked the court for permission to tender the funds to the court, and asked that the court determine the claimants' rights to the interpleaded funds and enjoin King, Noatex, and any other person from instituting an action against APMM for recovery of the funds.  On December 5, 2011, Noatex removed the interpleader complaint to federal district court, noting that "APMM is only a nominal party."  Soon after, APMM deposited $260,410.15 into the district court's registry.

In April 2012, the district court granted King's motion to remand due to lack of complete diversity between the parties.  *Noatex Corp. v. King Constr. of Hous., LLC*, 864 F. Supp. 2d 478, 483 (N.D. Miss. 2012).  In December 2012, the district court withdrew its remand, finding that APMM could have

---

[2] Noatex's action challenging the constitutionality of the Stop Notice statute proceeded separately.  In that action, the district court declared the Stop Notice statute facially unconstitutional.  *Noatex Corp. v. King Constr. of Hous., LLC*, 864 F. Supp. 2d 478 (N.D. Miss. 2012).  This court affirmed, *Noatex Corp. v. King Constr. of Hous., L.L.C.*, 732 F.3d 479 (5th Cir. 2013), and the Mississippi legislature subsequently repealed the statute.  Neither the district court nor this court found that the Stop Notice statute's unconstitutionality determined the rights of the parties; thus the resolution of the Stop Notice action did not resolve this interpleader action.  *See id.* at 488.

[3] The district court granted a motion to voluntarily dismiss the breach of contract action without prejudice.  *Noatex Corp. v. King Constr. of Hous., LLC*, No. 3:11-cv-00152 (N.D. Miss. Aug. 27, 2013), ECF No. 51.

3

No. 14-60217 c/w No. 14-60287

commenced the case in federal court under 28 U.S.C. § 1335.  The court directed APMM to redeposit the interpleader funds with the court, and APMM complied.

While the interpleader action was on remand, Noatex's counsel, Kohn, filed suit against APMM in the U.S. District Court for the Central District of California.  Kohn alleged that Noatex had defaulted on its obligations to pay for legal services.  Kohn claimed that an October 5, 2011 engagement agreement between Kohn and Noatex ("Engagement Agreement") "confer[red] a lien in favor of Kohn Law upon APMM's obligations to pay Noatex the amount of $260,410.15," that took priority over any other liens against Noatex. The Engagement Agreement also contained an arbitration clause:

> Except to the extent otherwise required by the Mandatory Fee Arbitration Act or other similar law, any dispute arising from this engagement shall be resolved by binding arbitration as provided by the rules of ADR Services, Inc. and in the Century City office of ADR Services, Inc. . . .

The California action was stayed "in favor of the ongoing Mississippi interpleader action."[4]  APMM moved to join Kohn to the interpleader action on the ground that Kohn claimed attorneys' fees owed by Noatex related to the APMM construction project and the only sums paid for such project were interpleaded.  APMM filed an amended complaint adding Kohn as a defendant.

APMM filed a motion for discharge as a disinterested stakeholder, which Noatex and Kohn—but not King—opposed.  In their joint opposition and in a joint motion to dismiss, Noatex and Kohn argued that APMM and King were bound by the Engagement Agreement to arbitrate this dispute and that the district court proceedings should be stayed pending arbitration.  Noatex and

---

[4] Kohn has appealed the stay order to the Ninth Circuit.  *Kohn Law Grp. v. Auto Parts Mfg. MS*, No. 13-55023 (9th Cir. argued Feb. 6, 2015).

Kohn also argued that the interpleader complaint failed to allege a claim for relief between Noatex, Kohn, and King.

On March 3, 2014, the district court granted APMM's motion to dismiss or discharge. The court found that the requirements for statutory interpleader under 28 U.S.C. § 1335 had been satisfied. The district court rejected Noatex's and Kohn's arguments that the discharge should be stayed pending arbitration and that APMM could not be discharged because it owed interest on the fund. It decided that the appropriate action was to discharge APMM as a disinterested stakeholder and proceed to determine the respective rights of the claimants. The district court discharged APMM and enjoined King, Noatex, and Kohn from filing any proceedings against APMM relating to the interpleader fund without authorization from the court.

On March 17, 2014, the district court denied Noatex and Kohn's motion to compel arbitration and to stay the proceedings pending arbitration, without prejudice to possible future arbitration between Noatex and Kohn.[5] The court found that Noatex and Kohn had waived their right to arbitration by substantially invoking the judicial process to King's detriment, that the motion to compel arbitration was not timely since it was filed after the commencement of the interpleader action, that no valid agreement bound King to arbitrate, and that this dispute was beyond the scope of any agreement to arbitrate.

Noatex and Kohn appealed the discharge order, as well as "all matters inextricably bound up" with that decision—over ten additional district court decisions. They also appealed the district court's denial of their motion to compel arbitration and to stay the action pending arbitration.

---

[5] The district court did not directly address arbitration as it applied to APMM, since it had discharged APMM two weeks earlier. Still, most of the court's reasoning is equally applicable to APMM.

No. 14-60217 c/w No. 14-60287

On March 24, 2014, the district court dismissed Kohn from the action, finding that any possible claims that Kohn had to the interpleader funds were not ripe because any lien depends on Noatex having rights in the fund.  The district court also found Kohn's dismissal proper because Kohn's claim was asserted after the interpleader action was commenced.  No party has appealed Kohn's dismissal.

On October 20, 2014, after the appeals were fully briefed, King and Noatex informed the district court that they had reached a settlement, and the district court dismissed the action without prejudice, retaining "complete jurisdiction to vacate this order and to reopen the action upon cause shown that settlement has not been completed and further litigation is necessary." *Auto Parts Mfg. Miss. v. King Constr. of Hous., LLC*, No. 1:11-cv-00251 (N.D. Miss. Oct. 20, 2014), ECF No. 262.  King and Noatex filed a joint settlement motion with this court asking this court to distribute the registry funds according to the terms of settlement ($109,750 to King and $150,660.15 to Noatex) and to dismiss the appeals solely as against King.  This panel dismissed the appeal for lack of jurisdiction, noting that we do not have jurisdiction to distribute the funds.  The district court granted King's and Noatex's subsequent motion to distribute the registry funds and dismissed the action without prejudice.  *Id.*, ECF No. 264.  The district court's distribution order did not address the injunction, and APMM filed a "motion to reopen and for clarification" that asked the district court to explicitly state that the injunction remains in effect.  *Id.*, ECF No. 265.  Noatex and Kohn opposed APMM's motion.  *Id.*, ECF No. 266.

This complicated procedural history leaves the following issues to be resolved on appeal:  1) appellants' motion to dismiss the appeals solely as to King; 2) APMM's invitation to dismiss the appeals in their entirety as moot, and, if granted, appellants' contingent motion to vacate the district court's

6

injunction; 3) appellants' appeal of the district court's order discharging APMM and enjoining appellants from filing any proceedings related to the interpleader funds; and 4) appellants' appeal of the district court's denial of their motion to compel arbitration and to stay the interpleader action pending arbitration.

## DISCUSSION

### I.

To begin, appellants move to dismiss the appeals as to King after King's settlement agreement with Noatex and the district court's distribution of the interpleader funds. Neither King nor APMM opposes the motion.[6] Accordingly we grant appellants' motion to dismiss the appeals as to King.

### II.

Next, we address appellants' appeal of the district court's order discharging APMM and enjoining appellants from filing any proceedings relating to the interpleader funds. We have jurisdiction pursuant to 28 U.S.C. § 1292(a), which grants this court jurisdiction to hear the appeal of an interlocutory order granting an injunction. Our review "extends only to those parts of an interlocutory order that relate to the grant of an injunction." *Ass'n of Co-op. Members, Inc. v. Farmland Indus., Inc.*, 684 F.2d 1134, 1138 (5th Cir. 1982). In reaching its injunction, the district court relied on its determinations that APMM was a disinterested stakeholder, that APMM had deposited the interpleader funds, and that there were adverse claims to the fund. Thus, we review the district court's discharge order in full, including the finding that the statutory requirements for interpleader were met.

### A.

---

[6] APMM asks that this court go further and dismiss the appeals in their entirety. We decline this invitation, because issues remain as to APMM. *See infra* Section II.A. Appellants' alternative motion to vacate is therefore denied as moot.

No. 14-60217 c/w No. 14-60287

The parties dispute the effect on our jurisdiction of the district court's distribution of funds and dismissal of the case. APMM contends that the distribution has mooted the appeal because the interpleader funds have been distributed and because, by settling, Noatex and King have abandoned any competing claims to the funds. Noatex and Kohn agree that the request for distribution of funds is moot, but maintain that their appeal of the injunction has not been mooted. They argue that the appeal of the injunction's validity is a live issue, evidenced by Kohn's intent to bring action against APMM and APMM's motion for clarification in the district court as to the continued applicability of the injunction.

Our jurisdiction depends on whether the injunction is still in effect; if the injunction is no longer in effect, the challenge to the injunction is moot and we need not consider it. The question boils down to whether the injunction was permanent or preliminary. Permanent injunctions survive dismissal of the case; preliminary injunctions do not. *See Venezia v. Robinson*, 16 F.3d 209, 211 (7th Cir. 1994) ("A preliminary injunction cannot survive the dismissal of a complaint."); *Rice v. Johnson*, 35 F. App'x 389 (5th Cir. 2002) (unpublished) (same); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2947 (3d ed.). The answer is not immediately obvious; the district court ordered that appellants "are enjoined from filing any proceedings against Plaintiff relating to the interpleader fund without an order of this Court allowing the same." The district court did not explicitly term its order a "permanent" or "preliminary" injunction. This confusion caused APMM to file a motion in district court to clarify the continued operation of the injunction.

We hold that the district court issued a permanent injunction that survives the subsequent order of dismissal. Several considerations lead us to reach this conclusion. First, APMM requested a *permanent* injunction in its

8

arguments in the district court, and appellants explicitly recognized—and opposed—APMM's request for a *permanent* injunction. The district court considered these arguments before issuing the injunction. Second, the district court relied on 28 U.S.C. § 2361, which authorizes a district court to issue a permanent injunction in an interpleader action when it discharges a plaintiff from further liability. *See* 28 U.S.C. § 2361; *see also Guy v. Citizens Fid. Bank & Trust Co.*, 429 F.2d 828, 831 (6th Cir. 1970) (construing an injunction restraining interpleader defendants from prosecuting any action against plaintiff to be a permanent injunction). Third, it makes good sense for an injunction connected to discharge of an interpleader plaintiff to be permanent. Imposing an injunction that lasts only for the duration of the interpleader action is inconsistent with interpleader's purposes of enabling "the plaintiff-stakeholder to avoid the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing." *Hussain v. Bos. Old Colony Ins. Co.*, 311 F.3d 623, 631 (5th Cir. 2002) (internal quotation marks and citations omitted). A permanent injunction is necessary to give meaning to the plaintiff's discharge and to encourage interpleader actions. *See In re Bohart*, 743 F.2d 313, 325 (5th Cir. 1984) ("[I]nterpleader statutes and rules are liberally construed to protect the stakeholder from the expense of defending twice, as well as to protect him from double liability." (internal quotation marks and citation omitted)).

Because appellants request vacatur of the permanent injunction, there is still a live issue before this court, and the challenge to the district court's injunctive relief is not moot.[7]

---

[7] Appellants, somewhat inconsistently, contend that APMM's motion for the district court to clarify its dismissal order to explicitly state that all interpleader defendants remain enjoined from pursuing APMM for the interpleader funds was a Fed. R. Civ. P. 59(e) motion to alter or amend the judgment, and therefore this court lacks jurisdiction over the appeal. We disagree. Appellants are appealing the injunction contained in the order granting

No. 14-60217 c/w No. 14-60287

## B.

We review the district court's grant of injunctive relief in an interpleader action for abuse of discretion. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 23 (2d Cir. 1997); *Metro. Life Ins. Co. v. Kubichek*, 83 F. App'x 425, 430 (3d Cir. 2003). To the extent it is a legal question, the underlying issue of whether the statutory requirements for interpleader have been met is reviewed de novo. *See Tex. Commerce Bank Nat'l Ass'n v. Florida*, 138 F.3d 179, 181 (5th Cir. 1998).

## C.

Before we address whether the district court abused its discretion in discharging APMM and enjoining the claimants from filing any claims relating to the interpleader funds, we determine whether the requirements for maintaining an interpleader action have been met. There are two types of interpleader: rule interpleader pursuant to Fed. R. Civ. P. 22 and statutory interpleader under 28 U.S.C. § 1335. They differ in jurisdictional requirements but not in substance. *See* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1703 (3d ed.). 28 U.S.C. § 1335 grants a district court jurisdiction over an interpleader action if: 1) the plaintiff files an action concerning an amount of $500 or more; 2) the plaintiff deposits the funds at issue into the registry of the court; 3) two or more adverse claimants claim or may claim to be entitled to the funds; and 4) those claimants are minimally diverse. *See* 28 U.S.C. § 1335(a). "Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent

---

APMM's motion to dismiss or discharge. APMM's motion to clarify does not seek to amend or alter the order appealed from, but rather asks to clarify a separate order of dismissal that has not been appealed. APMM's motion therefore does not strip this court of jurisdiction to consider the appeal of the injunction. *See Birdsong v. Wrotenbery*, 901 F.2d 1270, 1272 (5th Cir. 1990).

of one another." 28 U.S.C. § 1335(b). Interpleader actions proceed in two stages.

> In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants.

*Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999) (citation omitted). Whether the statutory requirements for interpleader have been met squarely concerns only the first stage of interpleader. A court considers the merits of the claimants' claims to the fund and the proper distribution of the fund only if the statutory elements for an interpleader action are met. *See id.*

Appellants do not dispute that the action meets most of the elements of statutory interpleader. APMM filed an action concerning $260,410.15 and deposited that sum with the registry of the court. APMM named as claimants King (a Mississippi citizen), Noatex (a California citizen), and later Kohn (a California citizen), satisfying § 1335's minimum diversity requirement.[8] *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967) ("[Section 1335] has been uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens."). The only disputed element is whether two or more adverse claimants claim, or may claim, entitlement to the funds. Tellingly, appellants concede that, at the time of filing—and when Noatex removed the action to federal court—the district

---

[8] The district court's discharge ruling primarily considered King's and Noatex's claims to the interpleader funds. The district court subsequently dismissed Kohn from the action, finding that Kohn did not occupy an adverse position vis a vis Noatex. No party has appealed Kohn's dismissal and we proceed on the assumption that King and Noatex are the only potentially adverse claimants. This assumption does not change our analysis.

court had jurisdiction over the interpleader action because all of § 1335's requirements were then met. Appellants concede that, at that time, "the Stop Notice issued by King Construction had represented an adverse claim against obligations exceeding $500 that APMM owes to Noatex." Appellants contend that, although the district court retained jurisdiction that was established at the time of removal, interpleader became improper when the district court held the Stop Notice statute unconstitutional. At that point, appellants argue, APMM no longer faced the prospect of multiple adverse claims against the interpleaded funds.

Appellants' argument, based heavily in traditional theories of equity, is that APMM currently faces only *separate* obligations to King and to Noatex. Thus, the argument goes, APMM is not subject to the possibility of multiple claims for the same funds, making interpleader improper. Despite the distribution of funds, appellants continue to reserve their rights to pursue separate claims for the portion of the interpleaded funds that was distributed to King. Essentially, appellants argue that King's claim was implausible and without merit because King's Stop Notice was vacated after the statute was declared unconstitutional. The district court's interpleader jurisdiction is determined at the time the interpleader complaint is filed. *See Walker v. Pritzker*, 705 F.2d 942, 944 (7th Cir. 1983) ("[I]nterpleader jurisdiction is determined at the time suit is filed and subsequent events do not divest the court of jurisdiction once properly acquired); *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 799 (7th Cir. 1980) (holding that, in a statutory interpleader action, "if jurisdiction exists at the outset of a suit, subsequent events will not divest the court of jurisdiction"). But even assuming that later events could divest the district court of its interpleader jurisdiction, the facts in this case would continue to show that interpleader jurisdiction existed. Although the unconstitutionality of the Stop Notice statute no longer

permitted King to unilaterally impound the funds via the operation of the Stop Notice statute, King still stated a claim to those funds.  APMM, faced with the claim—and Noatex's claim—was permitted to deposit the disputed funds and maintain an action for interpleader.  Appellants confuse the two stages of interpleader.  It is not for the district court, in determining whether interpleader is proper, to consider whether the competing claims are meritorious.  In fact, "in the usual case, at least one of the claims will be quite tenuous. . . . [N]othing more is implied than that the claims alleged must meet a minimal threshold level of substantiality."  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1704 (3d ed.). "[E]ven the mere 'threat of multiple vexation by future litigation provides sufficient basis for interpleader.'" *Tittle v. Enron Corp.*, 463 F.3d 410, 424 n.10 (5th Cir. 2006) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983)).  Statutory interpleader under § 1335 is especially liberal, permitting a valid interpleader action if two claimants "*may* claim to be entitled to" the interpleader funds, even if there is not yet a claim.  28 U.S.C. § 1335(a)(1) (emphasis added).

The district court did not—and in light of the settlement agreement, will not—opine on whether, in the absence of the Stop Notice statute, King could have succeeded on its claims in the second stage.  The first stage of interpleader only is concerned with whether multiple claims have been asserted, or may be asserted, against a disinterested stakeholder, not whether those claims have merit.  *See Rhoades*, 196 F.3d at 601 (finding a proper interpleader action where multiple parties informed a stakeholder that they claimed a pool of benefits).  Appellants have conceded in the district court, even after the Stop Notice statute was declared unconstitutional, that King at least claimed a right to the interpleader funds.  In support of its motion to stay the case pending arbitration, appellants argued that "[u]nder the circumstances of this action

No. 14-60217 c/w No. 14-60287

for interpleader, King Construction of Houston, LLC must also arbitrate *its claim* of asserted equitable rights to the interpleader fund."

There is also a "single, identifiable fund" that is the subject of the interpleader. *Rhoades*, 196 F.3d at 600 n.8 (citing *Wausau Ins. Cos. v. Gifford*, 954 F.2d 1098, 1100 (5th Cir. 1992)). Appellants argue that, whatever claim King had against Noatex, it was not a claim against the interpleaded funds. They characterize King as a general creditor whose claim is against APMM generally but not tied to the interpleader funds. Appellants rely on *Airborne Freight Corp. v. United States*, 195 F.3d 238 (5th Cir. 1999) to argue that King and Noatex assert rights to different debts.[9] In *Airborne*, this court held that a stakeholder could not force a general creditor to limit satisfaction of its judgment to specified funds to which other creditors asserted claims. *Id.* at 242. There, the claims of the general creditor and the other creditors stemmed from unrelated transactions, which was another reason not to require satisfaction from a single stake. *Id.* at 239. *Airborne* is easily distinguished. Neither Noatex nor King is a general creditor of APMM. The claims are not merely unrelated claims that arise separately against APMM. Both claimants sought the amount APMM deposited with the court registry. King's claim stemmed directly from its relationship with Noatex and from work on the same construction project. Appellants contend that they sought payment under purchase order contracts between APMM and Noatex, and that their contracts do not mention or involve King. Again, this is an argument about the validity

---

[9] Appellants also rely heavily on English Court of Chancery cases, most notably *Glyn v. Duesbury*, 11 Sim. 139 (Ch. 1840). Even if relevant, *Glyn* does not support appellants' claim that the claimants' debts must be the same. Rather, "[a] case of interpleader then arises where the same subject, whether debt, duty or thing is claimed." *Id.* at 148. Here, the same fund was claimed by both Noatex and King.

of King's claims and does not implicate the district court's decision that interpleader was a proper vehicle for this action.[10]

Faced with King's and Noatex's competing claims, APMM reasonably concluded that it was subject to multiple suits from adverse claimants seeking the same $260,410.15. APMM deposited the disputed sum with the registry of the court, thereby instituting and maintaining an interpleader action as permitted by 28 U.S.C. § 1335.

## D.

Having found the district court did not err in finding the statutory requirements of § 1335 interpleader met, we review its decision to discharge APMM and to enjoin the parties for abuse of discretion. The district court's discharge and injunction readily follow from its findings on statutory interpleader, and we affirm.

In an interpleader action, the district court "may discharge the plaintiff from further liability." 28 U.S.C. § 2361; *see also* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1714 (3d ed.) ("When the court decides that interpleader is available, it may issue an order discharging the stakeholder, if the stakeholder is disinterested."). "A district court has broad powers in an interpleader action." *Rhoades*, 196 F.3d at 600. APMM met the requirements of Section 1335 and disclaimed any right to the funds; there was no reason to keep APMM in a dispute solely between the adverse claimants. *See Tittle*, 463 F.3d at 423 (quoting Wright, Miller & Kane for the proposition that a disinterested stakeholder who is willing to tender the disputed funds "is not to be obliged to be at the expense and risk of defending an action; but, on giving up the thing . . . , *he is to be relieved, and*

---

[10] It is admittedly more difficult to determine if claims are for the same fund when the claims are for money and not for a unique piece of property; money is fungible. But we have upheld interpleader before when money was at stake. *See, e.g.*, *Tittle*, 463 F.3d at 423–25.

*the Court directs that the persons between whom the dispute really exists shall fight it out at their own expense*").

28 U.S.C. § 2361 also expressly authorizes a district court to enter an order restraining claimants "from instituting or prosecuting any proceeding in any State or United States court affecting the property . . . involved in the interpleader action until further order of the court." 28 U.S.C. § 2361; *see also Rhoades*, 196 F.3d at 600–01. The district court was well within its discretion to protect APMM—a disinterested stakeholder—from other suits seeking the interpleader funds. *See In re Bohart*, 743 F.2d at 325 ("[I]nterpleader statutes and rules are liberally construed to protect the stakeholder from the expense of defending twice, as well as to protect him from double liability." (internal quotation marks and citation omitted)).

Appellants present no argument why APMM should not be discharged besides arguing that interpleader itself is unwarranted. We therefore find that the district court did not abuse its discretion in discharging APMM from the action and in enjoining claimants from filing proceedings against APMM relating to the interpleader funds.

## III.

Noatex and Kohn also appeal the district court's denial of their motion to compel arbitration and to stay the interpleader action pending arbitration. We have jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a). Noatex and Kohn sought to compel APMM and King to arbitrate the entire interpleader dispute on the basis of an arbitration clause in the Engagement Agreement between Noatex and its law firm, Kohn. The district court denied the motion on numerous grounds, including: 1) appellants waived their right to arbitrate by substantially invoking the judicial process; 2) appellants' motion was untimely; and 3) the arbitration agreement between Noatex and Kohn did not require APMM and King to arbitrate this dispute. Noatex and Kohn argue

that their appeal is not moot because, if this court finds that arbitration should have been compelled, we have the authority to vacate the district court's discharge order and injunction.  Further, appellants contend that Noatex's claim for fees and costs incurred while Kohn was a party should be arbitrated.  Because there is a live controversy, we will decide the merits of the appeal.  We agree with the district court that the arbitration agreement did not require APMM to arbitrate this dispute, so we need not reach the district court's other grounds for denying the motion.[11]

## A.

We review a district court's denial of a motion to compel arbitration and denial of a stay pending arbitration de novo.  *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007); *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 908 (5th Cir. 2001).  We review for abuse of discretion a district court's determination of whether equitable estoppel may be invoked to compel arbitration.  *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 360 (5th Cir. 2003).  "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous."  *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).

## B.

Whether APMM has agreed, or is otherwise bound, to arbitrate is a threshold question for the court.  "[B]ecause arbitration is a matter of contract, where a party contends that it has not signed any agreement to arbitrate, the

---

[11] In their briefs, prior to settlement, appellants also argued that King is bound to arbitrate.  Because we have dismissed King from these appeals, we need not consider appellants' argument that King's defense of its entitlement to interpleader funds compels King or APMM to arbitrate.

court must first determine if there is an agreement to arbitrate before any additional dispute can be sent to arbitration." *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003). To determine whether the parties have agreed to arbitrate this claim, we ask "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002). These are separate inquiries; while the strong federal policy favoring arbitration applies to the scope of an arbitration agreement, "the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004); *see also Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002).

**i.**

We first decide whether there was a valid agreement to arbitrate between the parties. Kohn and Noatex, as signatories to the Engagement Agreement, have agreed to arbitrate certain disputes between them. The Engagement Agreement is an agreement for Kohn to provide legal services to Noatex and is signed only by Noatex and Kohn. It is undisputed that APMM is not a signatory to the contract containing the arbitration clause. Where some written agreement to arbitrate exists, we have recognized several theories for binding a non-signatory to an arbitration agreement. *See The Rice Co. (Suisse), S.A. v. Precious Flowers Ltd.*, 523 F.3d 528, 536–37 (5th Cir. 2008). Appellants contend that one of these theories—equitable estoppel—requires APMM to arbitrate, notwithstanding APMM's status as a non-signatory to the Engagement Agreement.

The parties dispute which body of law—federal, California, or Mississippi—applies to the question of whether equitable estoppel binds APMM to the arbitration clause. We need not resolve this question because

No. 14-60217 c/w No. 14-60287

APMM is not bound under any estoppel standard. *See Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267–68 (5th Cir. 2004) (under federal law, a non-signatory is bound to arbitrate when it sues "based upon" the contract); *JSM Tuscany, LLC v. Superior Court*, 123 Cal. Rptr. 3d 429, 445 (Cal. Ct. App. 2011) (under California law, a non-signatory is bound to arbitrate when pursuing a claim that is "dependent upon or inextricably intertwined" with the contract obligations); *Scruggs v. Wyatt*, 60 So. 3d 758, 770 (Miss. 2011) (under Mississippi law, a non-signatory is bound to arbitrate when its claims are "directly dependent" on the contract).

Appellants argue that APMM can establish the existence of "conflicting claims"—a prerequisite to its interpleader action—only by reference to the Engagement Agreement. However, APMM can establish—and has established—the existence of conflicting claims necessary for interpleader by referencing the dispute between King and Noatex alone, without reference to the Engagement Agreement. Statutory interpleader requires the assertion of two or more claims to the same fund. *See* 28 U.S.C. § 1335(a)(1); *Rhoades*, 196 F.3d at 600 (holding that the statutory requirements for interpleader are met if there are adverse claimants to a single fund). Here, claims were asserted by Noatex and King; interpleader did not depend on including Kohn's claims to the fund. Thus, while the language of the Engagement Agreement may have been *sufficient* to establish conflicting claims—of Noatex and Kohn—it was not *necessary*. Appellants concede this point by arguing that "APMM and King Construction are bound to arbitrate, *even though the amended interpleader complaint is also pleaded and disputed on alternate grounds that do not reference the engagement agreement.*" Claims cannot be inextricably intertwined with, directly dependent on, or based on a contract if they can be shown without reference to the contract.

19

We also note that this case does not fit the rationale of the equitable estoppel exception. APMM is not trying to "hav[e] it both ways" by seeking to hold Noatex and Kohn liable pursuant to a contract that contains an arbitration provision and, at the same time, deny arbitration's applicability. *Bailey*, 364 F.3d at 268. We see no unfairness in refusing to compel a non-signatory party to arbitrate a dispute based on an arbitration clause contained in an attorney engagement agreement signed by two other parties. Because APMM has not agreed to arbitrate disputes with Noatex and Kohn, and is not required by equitable estoppel to arbitrate, we affirm the district court's denial of appellants' motion to compel arbitration and to stay the proceedings. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) ("[A] party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute . . . .").

**ii.**

Because we find that APMM did not agree to arbitrate this dispute and that equitable estoppel does not compel it to arbitrate, we need not address whether the scope of the agreement includes the interpleader suit. *See Tittle*, 463 F.3d at 419 (determining scope of arbitration clause only because there was no dispute that parties were subject to a valid agreement to arbitrate). We also do not reach the district court's alternative grounds for denying appellants' motion to compel.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's discharge of APMM and its accompanying injunction. We also AFFIRM the district court's denial of appellants' motion to compel arbitration and to stay proceedings pending arbitration. King Construction is DISMISSED from these appeals. Appellants' alternative motion to vacate the district court's rulings is DENIED.