# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 2, 2026

Lyle W. Cayce
Clerk

————————

No. 25-40235

————————

Dentons US L.L.P.; Wilson, Robertson & VanDeventer P.C.,

*Intervenors—Appellants*,

*versus*

Stairway Legacy Assets, L.P.; Ironshore Specialty Insurance Company,

*Intervenors—Appellees*.

———————————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:11-CV-201

———————————————————————————

Before Smith, Stewart, and Haynes, *Circuit Judges*.

Per Curiam:[*]

Dentons US L.L.P. ("Dentons")[1] and Wilson, Robertson & VanDeventer, P.C. (the "Wilson Firm" and, together with Dentons,

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] Dentons merged with McKenna, Long & Aldrige LLP ("McKenna") in 2015 and is the surviving successor to McKenna. We endeavor to use the names McKenna and Dentons consistent with this timeline.

No. 25-40235

"Law Firms") appeal the summary judgment in favor of Ironshore Specialty Insurance Company ("Ironshore") and the partial summary judgment for Stairway Legacy Assets, L.P. ("Stairway"). For the reasons discussed below, we AFFIRM.

## I.    Factual & Procedural Background

Because of parties' addressing the past, the factual and procedural history preceding this instant case has some relevance. Most relevant here, in 2008, Eidos Display, LLC (together with Eidos III, LLC, "Eidos") executed a patent purchase agreement with LG Display Co., Ltd. ("LG") (the "ALPS Agreement").[2] Through the ALPS Agreement, LG sold to Eidos "all right, title, and interest it" had in several patents it jointly owned with another entity, including U.S. Patent No. 5,879,958 (the "ALPS Patent"), in exchange for a transfer fee and "Deferred Payment Obligations." Regarding these "Deferred Payment Obligations," the ALPS Agreement states that "Eidos agrees to pay to LG . . . fifty-five percent . . . of all Net Revenues Eidos receives from the . . . enforcement" of the purchased patents, "including any settlement fees." "Net Revenues," in turn, is defined as "all sums received by Eidos" in relation to "enforcing the Patents . . . that are remaining following deduction of the attorneys' fees, expenses (including expert fees), and costs associated with one or more of the" patents' enforcement.

In 2010, to finance the enforcement of the ALPS Patent and a separate patent (the "Patent Enforcement Program"), Eidos executed a loan agreement with Stairway (the "Loan Agreement"). Under the Loan Agreement, Stairway established a term loan credit facility for Eidos for up

---

[2] While only Eidos Display, LLC is listed in the ALPS Agreement, for purposes of this appeal we consider these entities together, as the district court did, and the parties do.

to $25 million. As Law Firms and Stairway explain, to secure this loan, Stairway obtained an interest in Eidos's recoveries under the Patent Enforcement Program. Eidos contemporaneously obtained a contingent loss reimbursement policy from Ironshore (the "Policy"), which initially provided a $20 million aggregate liability limit for losses and covered Eidos if it did not obtain sufficient funds to pay Stairway via the Patent Enforcement Program. The Policy also included an arbitration clause.

Stairway issued Eidos a default letter under the Loan Agreement in 2011, and, in 2013, Ironshore filed a statement of claim and demand for arbitration against Eidos. After litigation regarding various aspects of the arbitration, including before the Southern District of New York, eventually various entities, including Eidos, Ironshore, Stairway, and McKenna, participated in proceedings before an arbitration panel (the "Panel"). In 2017, after extensive briefing and a nineteen-day hearing, the Panel issued an arbitration award (the "Award"). Most relevant here, the Panel concluded: (1) Stairway was entitled to an award against Eidos under the Loan Agreement for $25 million plus interest; (2) Stairway was entitled to an award against Ironshore as a Loss Payee under the Policy for $20 million plus interest; (3) Ironshore, upon paying Stairway's award against it, would have "a first priority, perfected lien and security interest in all of Eidos's assets, including . . . any future proceeds from the ALPS Patent Litigation," equal to Ironshore's award paid to Stairway; and (4) Ironshore's interest in Eidos's assets would continue until Eidos receives $12,325,000, at which point Stairway would "have the first priority, perfected lien and security interest in all assets of Eidos."

Dentons petitioned in New York state court to vacate the Award. In 2018, the New York court affirmed the Award "in its entirety and as to all

parties."[3] Dentons appealed again, and in 2019 the New York First Department unanimously affirmed the lower court's judgment. New York's Court of Appeals denied Eidos's and Dentons's motion for leave to further appeal in 2020.

That brings us to the instant case. In 2011, Eidos sued multiple entities for infringing the ALPS Patent, including Chi Mei Innolux Corporation and Chi Mei Optoelectronics USA, Inc. (together, "Innolux"), in the Eastern District of Texas. Eidos eventually settled with Innolux, and the proceeds (the "Settlement Proceeds") were deposited into the registry of the district court.[4]

Law Firms,[5] Ironshore, and Stairway moved to intervene in this case between March 2020 and November 2023, requesting that the district court determine their rights to the Settlement Proceeds. The district court granted these motions. While these parties, Eidos, and LG all initially noticed claims to the Settlement Proceeds, Ironshore and Stairway agreed to a confidential settlement with LG, in which LG released any rights it could have pursued regarding the Settlement Proceeds under the ALPS Agreement.

Law Firms, Ironshore, and Stairway eventually moved for summary judgment. The district court granted Ironshore's motion, partially granted Stairway's motion, and denied Law Firms' motion. It reasoned that Law

---

[3] The court reaffirmed that Ironshore would have the "first priority, perfected lien and security interest in any and all assets of Eidos" to secure the $12,325,000 amount plus "post-Award interest."

[4] Ironshore claims that the Settlement Proceeds were worth at least $29 million in August 2025, while Stairway avers that the Settlement Proceeds were valued at over $32 million as of July 2025. Law Firms, meanwhile, aver that settlements in this case exceed $43 million, and that the recoveries total approximately $36 million.

[5] As the district court noted, Law Firms served as Eidos's counsel in this case.

No. 25-40235

Firms' claims to the Settlement Proceeds failed because (A) Law Firms cannot claim LG's rights to the Proceeds, as LG released its rights, (B) res judicata applies, given the Panel rejected the same arguments that Law Firms pressed again before the district court, (C) collateral estoppel similarly applies, and (D) the Wilson Firm was in privity with Dentons and Eidos, and thus is bound by the Award. The district court also determined that, per the New York state-court proceedings, Ironshore would take from the Settlement Proceeds "the principal amount it is due plus applicable post-judgment interest before priority reverts to Stairway." Law Firms timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had interpleader jurisdiction over the competing claims of Law Firms, Ironshore, and Stairway to the Settlement Proceeds under 28 U.S.C. § 1335(a).[6] While the district court did not issue a separate, final judgment after its summary judgment order, we have jurisdiction over this appeal under 28 U.S.C. § 1291 where the district court's order on the parties' competing summary judgment motions used "definite language" and the district court evidently "intended that its order be effective immediately."[7] *Ueckert v. Guerra*, 38 F.4th 446, 450–51 (5th Cir. 2022) (citation modified).

---

[6] *See generally Auto Parts Mfg. Miss., Inc. v. King Constr. of Hou., L.L.C.*, 782 F.3d 186, 193–94 (5th Cir. 2015) ("The district court's interpleader jurisdiction is determined at the time the interpleader complaint is filed."); *see also id.* at 194 (quoting *Walker v. Pritzker*, 705 F.2d 942, 944 (7th Cir. 1983), for the proposition that "subsequent events do not divest the court of [interpleader] jurisdiction once properly acquired").

[7] Indeed, before addressing the parties' cross-motions for summary judgment, the district court characterized Law Firms, Ironshore, and Stairway as "[t]he parties remaining" in the case, and it accepted these parties' representations that their cross-motions contained the only remaining live issues. The record here thus indicates that "the

No. 25-40235

We review de novo a district court's grant of summary judgment. *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Oreck Direct, LLC*, 560 F.3d at 401.

## III.    Discussion

On appeal, Law Firms assert seven arguments: (1) res judicata does not bar Law Firms' claims to the Settlement Proceeds; (2) collateral estoppel does not bar Law Firms' claims to the Settlement Proceeds; (3) LG could not release Law Firms' rights to the Settlement Proceeds, as Dentons was a third-party beneficiary under the ALPS Agreement; (4) the Award cannot bind the Wilson Firm, as it was not a party before the Panel; (5) neither Stairway nor Ironshore has rights to LG's shares of the Settlement Proceeds; (6) Law Firms have an attorney's lien against the Settlement Proceeds; and (7) Law Firms can recover from the Settlement Proceeds under the "common fund doctrine." However, Law Firms varied in their reply brief, explaining that "[t]his case comes down to two questions: (1) did LG have an interest in the Settlement Proceeds and (2) is Dentons a third-party beneficiary of the ALPS Agreement?" These two questions, in turn, collapse into one in light of the facts of this case[8]—whether McKenna, and thus Dentons, was a third-party beneficiary under the ALPS Agreement, such that LG's settlement with Ironshore and Stairway could not affect Law

_____

district court . . . decided all [live] claims against all parties," and its decision was "plainly final." *Williams v. Seidenbach*, 958 F.3d 341, 346 (5th Cir. 2020) (en banc).

[8] That is, while Law Firms question whether LG had an interest in the Settlement Proceeds, LG expressly released any interest it had in the Settlement Proceeds. Thus, LG itself has no rights or interest in the Settlement Proceeds.

6

No. 25-40235

Firms' right to recover from the Settlement Proceeds.[9] We thus turn to this question, since that is what they are appealing.[10]

Law Firms assert that Delaware law governs the ALPS Agreement and cite several Delaware cases that explain the three conditions required for third-party beneficiary status and support their argument that "[t]he parties to the agreement may not modify or deprive the beneficiary of a vested right without the beneficiary's consent." *See Crispo v. Musk*, 304 A.3d 567, 574 (Del. Ch. 2023) (citation omitted). Law Firms specifically contend that the ALPS Agreement and enforcement program demonstrate Eidos's and LG's intent to benefit McKenna, satisfying pre-existing obligations, and that this intended benefit was material to the ALPS Agreement. Law Firms also assert that "judicial precedent," including from the Southern District of New York, "established" "the firm's status" as a third-party beneficiary. Thus, Law Firms argue, McKenna was a third-party beneficiary under the ALPS Agreement, and LG accordingly could not release Dentons's rights under the ALPS Agreement when it released its own rights to the Settlement Proceeds.

Ironshore counters that Law Firms' third-party beneficiary claim is barred and meritless, as LG released its rights to the Settlement Proceeds, and Law Firms also failed to satisfy the conditions required under Delaware law for proving third-party beneficiary status. Meanwhile, Stairway asserts

---

[9] Indeed, Law Firms expressly disclaim any challenge to the Award, which they aver "only adjudicated [Law Firms'] rights to Eidos'[s] . . . share of the Settlement Proceeds." Rather, they explain (with emphasis added) that their "claims for legal fees and costs here are *only* asserted against *LG Display Co.'s* . . . undisputed fifty-five percent . . . share of the Settlement Proceeds under . . . the 'ALPS Agreement[.]'"

[10] While we do not have to decide it given what we are determining here, we do agree with the district court on the res judicata issue, which was discussed in the original brief and briefly in the reply brief.

that Law Firms "waived" their opportunity to make this claim for the first time on appeal and failed to demonstrate their right to assert third-party beneficiary status.

As we have explained, "[a] party forfeits an argument by . . . failing to adequately brief the argument on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021); *see also* FED. R. APP. P. 28(a)(8)(A). In *Rollins*, we collected cases demonstrating ways that parties can inadequately brief arguments, such as by failing to "offer any supporting argument or citation to authority." 8 F.4th at 397 n.1 (citation omitted). To that end, a party that fails to properly raise an argument in its opening brief generally forfeits that argument. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004). Indeed, we reasoned that a party waived[11] an argument when it offered only "random and unfocused references that d[id] not cite the record or relevant caselaw." *Carl E. Woodward, L.L.C. v. Acceptance Indem. Ins. Co.*, 743 F.3d 91, 96 (5th Cir. 2014).

We conclude that Law Firms forfeited their argument that Dentons is a third-party beneficiary under the ALPS Agreement. To begin, many of Law Firms' contentions on this issue are conclusory and unsupported by record citations. *See Rollins*, 8 F.4th at 397 n.1. For instance, Law Firms state in their opening brief's argument section that "the ALPS Agreement[] was designed from its inception not only to benefit the contracting parties Eidos and LG, but also their counsel." However, Law Firms fail to offer any record support for this statement. Likewise, even assuming Law Firms' scant citations on page 31 of their opening brief are intended to support multiple

---

[11] While waiver and forfeiture "are often used interchangeably," these concepts differ in several respects. *Indigenous Peoples of Coastal Bend v. U.S. Army Corps of Eng'rs*, 132 F.4th 872, 882 (5th Cir. 2025) (citation omitted). As discussed below, forfeiture is relevant here. *See id.*

No. 25-40235

assertions (such as the abovementioned), the only part of the record they cite on this page is a Dentons partner's declaration. While Law Firms mention the ALPS Agreement's "Net Revenues" and "Revenue Interest" provisions,[12] they offer no record citations to the ALPS Agreement itself anywhere in their opening brief's argument section on this issue to analyze the ALPS Agreement's language.

Law Firms also argue that "judicial precedent" "established" Dentons's third-party beneficiary status. For record citations, Law Firms rely on another Dentons partner's declaration and a 2015 opinion from the Southern District of New York. However, despite offering this district court opinion to support their third-party beneficiary argument, Law Firms themselves appear to acknowledge that this opinion only concluded that McKenna was a third-party beneficiary of *the Policy*. Law Firms fail to bridge the gap in their opening brief between this district court opinion and Dentons's purported third-party beneficiary status under *the ALPS Agreement*.[13]

---

[12] Law Firms aver that "the 'Net Revenues' and 'Revenue Interest' provisions of the ALPS Agreement" demonstrate Eidos's and LG's intent for Dentons to be a third-party beneficiary. However, while Law Firms cite a paragraph in a Dentons partner's declaration to support this assertion, this paragraph *only* mentions the ALPS Agreement's "Net Revenues" provision. Indeed, elsewhere in their opening brief, Law Firms describe the term "Revenue Interest" in relation to the *Loan Agreement*, rather than the ALPS Agreement.

[13] On reply, Law Firms argue that "[t]he Policy was a central part" of the Patent Enforcement Program, and that McKenna "cannot be a third-party beneficiary of one without the other." Law Firms offer no record or case law support for this conclusory statement. Likewise, Law Firms note that the Southern District of New York acknowledged McKenna's role as counsel in the Patent Enforcement Program, but they fail to demonstrate how that would allow us to accordingly deem Dentons a third-party beneficiary under the ALPS Agreement per applicable Delaware law.

No. 25-40235

Moreover, while Law Firms cite several Delaware cases to establish general propositions of third-party beneficiary law, they fail to cite any case law to support the argument that Dentons should be considered a third-party beneficiary *in the specific context of the ALPS Agreement*. For example, under Delaware law, courts consider the contracting parties' intent when determining third-party beneficiary status. *See Bako Pathology LP v. Bakotic*, 288 A.3d 252, 271 (Del. 2022). Although Law Firms quote a Delaware case that mentions this and the other conditions of third-party beneficiary status, they fail to cite and discuss, and thereby forfeit, cases applying these or related Delaware law principles in contexts comparable to this case.[14] Despite acknowledging Ironshore's own citations to Delaware law, Law Firms' reply brief is devoid of *any* case law citations in its argument section on third-party beneficiary status.

In sum, Law Firms have failed to adequately brief their third-party beneficiary argument. Many of the contentions in their opening brief's argument section on this issue are devoid of record support or otherwise rely on declarations from Dentons partners and a Southern District of New York opinion, which Law Firms stretch past its reasonable limit. Likewise, Law Firms' case law citations are general and do not support the conclusion that Dentons was a third-party beneficiary in the specific context of the ALPS Agreement. Accordingly, we conclude that Law Firms have forfeited their

---

[14] Similarly, Law Firms aver that "Delaware law is clear that the parties to a contract may not modify or deprive the beneficiary of a vested right without the beneficiary's consent." However, in their opening brief, Law Firms fail to argue that their alleged right was vested or provide record or case law support for such a conclusion. Law Firms only assert on reply that Dentons's alleged rights under the ALPS Agreement vested in 2008, and they fail to offer record support for this conclusory statement. Law Firms thus forfeited this argument. *See Procter & Gamble Co.*, 376 F.3d at 499 n.1 ("P&G . . . has waived this argument by failing to raise it in its opening brief, which . . . does not provide [relevant] contentions, facts, legal citations, arguments, or analysis[.]").

third-party beneficiary arguments. *See Rollins*, 8 F.4th at 397 n.1; *Carl E. Woodward, L.L.C.*, 743 F.3d at 96; *see also United States v. Stalnaker*, 571 F.3d 428, 439–40 (5th Cir. 2009) (concluding appellant waived arguments where she "describe[d] a laundry list of grievances, [but] d[id] not *fully* explain them and often d[id] not cite the record or *relevant* law" (emphasis added)).

Even if Law Firms did not forfeit their third-party beneficiary arguments, we would conclude that they failed to demonstrate that Dentons qualifies as a third-party beneficiary under the ALPS Agreement.

As the parties agree, and as is reflected in the ALPS Agreement's plain language, Delaware law governs the ALPS Agreement. *See Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 419 (5th Cir. 2014). Under Delaware law, to be considered a third-party beneficiary to a contract,

> (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract.

*Bako Pathology LP*, 288 A.3d at 271 (citation omitted). Delaware courts have explained that "[a] plaintiff attempting to establish third party beneficiary status should either plead that it is named or otherwise identified in the contract or plead facts which could reasonably lead to the inference that it was an intended beneficiary." *Greater N.Y. Mut. Ins. Co. v. Travelers Ins. Co.*, No. 10-cv-01107, 2011 WL 4501207, at *3 (D. Del. Sept. 28, 2011) (citing *Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 534 (Del. Super. Ct. 1990)). Under Delaware law, in this context "court[s] must look to the language of the policy to determine the parties' intent." *Willis v. City of Rehoboth Beach*, C.A. No. 03C-11-016, 2004 WL 2419143, at *2 (Del. Super. Ct. Oct. 14, 2004).

No. 25-40235

The ALPS Agreement does not mention McKenna by name; rather, Law Firms largely rely on the ALPS Agreement's definition of "Net Revenues," which addresses "all sums received by Eidos as a result of . . . enforcing the Patents . . . that are remaining following deduction of the attorneys' fees, expenses (including expert fees), and costs." While McKenna's absence in the ALPS Agreement does not preclude Dentons from being a third-party beneficiary under Delaware law, Law Firms needed to "plead facts which could reasonably lead to the inference that [McKenna] was an intended beneficiary." *Greater N.Y. Mut. Ins. Co.*, 2011 WL 4501207, at *3 (citing *Delmar News, Inc.*, 584 A.2d at 534). However, as noted above, Law Firms fail to offer record support demonstrating "facts" that would "*reasonably* lead to th[at] inference."[15] *Id.* (emphasis added) (citing *Delmar News, Inc.*, 584 A.2d at 534).

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's summary judgment order.[16]

---

[15] Likewise, it is unclear that Eidos's and LG's alleged intent to benefit McKenna was "a *material* part of [their] purpose in entering into the" ALPS Agreement. *Bako Pathology LP*, 288 A.3d at 271 (emphasis added) (citation omitted). Indeed, in its settlement with Ironshore and Stairway, LG explicitly disavowed Dentons's being a third-party beneficiary under the ALPS Agreement. While this postdates the ALPS Agreement, we nonetheless note this fact, as well as the fact that Delaware law requires that "the intent to benefit the third party must be a material part of the *parties'* purpose," rather than a singular party's purpose, "in entering into the contract." *Id.* (emphasis added) (citation omitted).

[16] To the extent Law Firms argue that Ironshore and Stairway have no rights to LG's purported share of the Settlement Proceeds, as discussed above, LG released any rights it had to the Proceeds, and it also agreed to not oppose Stairway's and Ironshore's efforts to recover money from the Settlement Proceeds or district court registry. Law Firms fail to identify any provision in the ALPS Agreement that prevented LG from releasing its

_____

own claims to payments that it may otherwise have been owed under the ALPS Agreement's "Deferred Payment Obligations" section.